## LUMBERMEN'S RECIPROCAL ASS'N v. ADCOCK et al. (No. 776.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 11, 1922. Rehearing Denied Oct. 25, 1922.)

1. **Admiralty ⬤═20—Raising logs sunk in waters of boom not maritime employment, though in navigable stream.**

Employment of one on a raising flat or boat, to which was attached appliances for raising logs sunk in a boom in navigable waters was not maritime in character, and the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) applied.

2. **Evidence ⬤═125—Rule as to admissibility of declarations by injured party, made contemporaneously with injury, stated.**

All declarations or exclamations uttered by a party who has been injured and which are contemporaneous with and accompany the injury, and are calculated to throw light on the motives or intentions of the party making the declaration or complaint, are admissible as part of the res gestæ.

3. **Evidence ⬤═127(3) — Evidence of injured servant's declarations as to pain and suffering admissible as res gestæ.**

Where an employé was injured at not later than 7:30 a. m., evidence of statements made to his wife at the time he arrived at home at about 10 o'clock was not admissible as res gestæ of the original injury, but only admissible

as res gestæ of his pain and suffering at the time the statement was made.

**4. Evidence ☞128—Statements of injured servant to doctor as to cause of injury 5 or 6 hours subsequent inadmissible as res gestæ of original injury.**

Where an employé was injured not later than 7:30 a. m., evidence of statements made to a doctor 5 or 6 hours afterwards as to how he sustained his injury was inadmissible as res gestæ of the original injury, nor as a statement of his pain or suffering at the time.

**5. Appeal and error ☞1050(1) — Admitting evidence of injured servant's statement to wife as to cause of injury, made several hours after alleged injury, prejudicial error.**

Where the only direct evidence of fact that an employé was injured while in the course of his employment was of doubtful character, the admission of evidence as to statements that the employé made to his wife several hours afterwards as to the cause of his injury was prejudicial error.

Error from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by the Lumbermen's Reciprocal Association against Mrs. Tom Adcock and others, to set aside an award by the Industrial Accident Board. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Andrews, Streetman, Logue & Mobley, of Houston, and R. E. Masterson, of Beaumont, for plaintiff in error.

C. W. Howth, of Beaumont, for defendants in error.

HIGHTOWER, C. J. This was a suit by the appellant, Lumbermen's Reciprocal Association, against the appellees Mrs. Tom Adcock and the two minor children of herself and Tom Adcock, deceased, to set aside an award by the Industrial Accident Board of Texas in favor of appellees against appellant, in the aggregate sum of $5,400. The cause was tried with a jury and resulted in a verdict and judgment in favor of appellees and against appellant for the aggregate amount of $5,400, to be discharged by appellant paying to appellees the sum of $15 per week for 360 weeks, a portion of the recovery, however, being awarded to appellees' attorneys. From this judgment against it, appellant has brought the case to this court, assigning a number of errors, but we shall only mention specifically three of them.

Tom Adcock, before his death, was an employé of the Keith Lumber Company, a concern engaged in the manufacture of lumber in Jefferson county, Tex., at its sawmill on Pine Island bayou in said county. The sawmill was located right near the south bank of the bayou, and when timber was brought to the mill for manufacture into lumber, it was unloaded from railroad cars into Pine Island bayou and placed within a "boom," and kept there until dragged to the mill by machinery for that purpose, to be sawed into lumber. This "boom" was constructed by driving large piling in the stream of Pine Island bayou on the side next to the mill, and the logs or timber, when drawn into the bayou, would be placed within this "boom" and there fastened so as to prevent their being carried away by the stream. Sometimes logs thus placed in the "boom" would become water soaked and sink to the bottom of the bayou before they would be carried to the mill for manufacture into lumber, and, in order to recover such sunken logs, it was necessary for the Keith Lumber Company to construct what is termed in the evidence a raising flat or raising boat, to which was attached appliances for raising the sunken logs. This raising flat or boat, as best we can explain from the evidence, was constructed by having two nearly square flat boards fastened together by means of cross-timbers nailed across the ends of boats and another cross-timber nailed across the middle of the boats, to which a windlass was attached, and hooks were let down by means of the windlass to the bottom of the bayou, and fastened to the sunken logs, and by operating the windlass such logs were raised to the surface, and in that way recovered. Each of these flat boats was between 16 and 18 feet long, but not quite so wide, and as completed they were only several feet apart, perhaps two or three feet, on the surface of the water. This raising boat or flat was used by the Keith Lumber Company for the exclusive purpose of raising sunken logs from the bottom of the bayou, and almost exclusively was operated within the log "boom," above mentioned. The boat was not used for the transportation of anything, and went nowhere, and was operated for no purpose other than to raise the sunken logs around the log "boom," as before stated. Tom Adcock was employed by the Keith Lumber Company to operate this raising boat, and had been engaged in that employment exclusively for a considerable period of time prior to the date that appellees claimed he received an injury which resulted in his death.

The Keith Lumber Company was a subscriber under the Workmen's Compensation Act and Employers' Liability Act of this state (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and carried with appellant, Lumbermen's Reciprocal Association, a policy of insurance covering its employés which was in force at the time of the injury claimed to have been sustained by Tom Adcock.

In its petition to set aside the award of the Industrial Accident Board, appellant attacked the award on two grounds. The first ground was that the Industrial Accident Board of this state had no authority or juris-

diction to make the award for the reason, as alleged, that Tom Adcock, if injured at all, as claimed by his widow and children was operating a boat or vessel upon a navigable stream, and that he was performing duties at the time under a contract which was maritime in nature and character, and that the only court that could take cognizance of the claim of damages growing out of his injuries, and death, would be an admiralty court of the United States, and that therefore the Industrial Accident Board of this state had no authority to entertain the claim for compensation, and that the Workmen's Compensation Act of this state could have no application to such claim. This states, substantially, the first ground of attack made upon the award by appellant. The next was that Tom Adcock did not receive any injury while engaged in the performance of his duties under his employment with the Keith Lumber Company, and that his death was not caused by any injury received by him, but, on the contrary, that his death was caused solely by a disease which he had several years before contracted, and which had resulted in a serious inflammation and chronic condition of the urethal passage, from which blood poisoning set up, resulting in his death. The issue of fact as to the cause of Adcock's death was determined by the jury against appellant.

[1] We shall first dispose of appellant's contention that the Workmen's Compensation Act of this state can have no application, for the reason that Tom Adcock's contract of employment and the services he was performing at the time it is claimed he was injured were maritime in character, and therefore only a federal court, sitting in admiralty, would have jurisdiction of the claim. We have stated above the nature and character of the work that Tom Adcock was performing at the time it is claimed he was injured, and the character of the boat or flat which he was operating. It is also true that Pine Island bayou at the point where it is claimed Adcock was injured, is a navigable stream.

Upon the facts stated, however, we have reached the conclusion, after consideration of many authorities cited by appellant, that the work that Adcock was doing at the time he was injured, if he was, and his contract of employment with the Keith Lumber Company, were not maritime in character, and that notwithstanding the injury, if it happened at all, occurred upon a navigable stream, the Workmen's Compensation Act of this state may be applied, and that, even if an admiralty court might have jurisdiction, the same would not be exclusive of the state courts.

In the case of Thames Tow Boat Co. v. Schooner Francis McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245, it was held that where neither the employé's general employment nor his activities at the time of the injury had any direct relation to navigation or commerce, as those terms are commonly understood, the contract was not maritime in nature, and that an admiralty court of the United States would not have jurisdiction of such a claim exclusive of a state's Workmen's Compensation Act, even though the injury occurred upon a navigable stream. Unquestionably the contract between the parties here was made with reference to the Workmen's Compensation Statute of this state and the Employers' Liability Act, and their rights and liabilities had no direct relation to navigation in any sense, and it is certain, from the nature of the work that Adcock was engaged in at the time he was injured, if he was, had no connection whatever with navigation, in the legal acceptation of that term, and therefore the application of the Workmen's Compensation Act of this state could in no sense materially affect any rule of the sea whose uniformity is essential. See Grant Smith-Porter Shop Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. ——, where a number of authorities are cited and discussed by the Supreme Court of the United States. Appellant's contention that the Workmen's Compensation Act of this state can have no application to the claim asserted by the appellees here is overruled.

It is next insisted that the evidence adduced upon the trial was wholly insufficient to establish the contention of appellees that Tom Adcock received any injury at all while performing the duties of his employment with the Keith Lumber Company, and that therefore appellant's request for an instructed verdict should have been granted.

When appellees filed their claim before the Industrial Accident Board, they stated that Tom Adcock was injured on November 18, 1919, while performing his duties on the boat above described, and that the injury so received resulted in his death, which occurred on the 15th of December thereafter. The only witness who testified on the trial below as to how and when Adcock received an injury was Wiley Morris. That witness testified, substantially, that he was with Tom Adcock on the morning of November 18, 1919, and that about 7:30 o'clock on that morning, Tom Adcock, while walking on the plank or piece of timber from one part of the boat to the other, lost his balance and fell astride of the plank or timber on which he was walking, and that Adcock immediately complained and stated that he thought he was badly hurt. Appellant introduced a great deal of evidence tending to show that Wiley Morris was not with Tom Adcock on the morning of November 18, 1919, nor on any other day of that month, and that said witness was not employed by the Keith Lumber Company at said time, as he testified he was, and that if Adcock received any injury at all, as claimed by the appellees, Wiley Morris knew nothing about it. We repeat

that the evidence introduced by appellant contradicting Wiley Morris and tending to show that he was not even with Adcock at the time the claimed injury occurred, together with the contradictory and inconsistent statements of Wiley Morris himself, is almost overwhelming; and if the truth or falsity of Wiley Morris' evidence in this case was left for our determination, we feel that we could not escape the conclusion that his testimony upon this trial was willfully false. In view of the fact, however, that the judgment in this case must be reversed for another reason, it becomes unnecessary for us to determine whether the evidence was insufficient to show that Adcock was injured while performing his duties upon the log "boom" as claimed by appellees.

Upon the trial of the case in the lower court, Mrs. Tom Adcock was a witness for the appellees, and among other things, she testified, substantially, that Tom Adcock left his home on the morning of the claimed injury about 6 or 6:30 o'clock, to go to his place of work on the log boat; that she neither saw nor heard anything further from Adcock until about 10 o'clock of the same morning; that about 10 o'clock Adcock came home and complained of an injury in the locality of his urinary organs, and claimed to be suffering severely; and that she, the witness, could see that Adcock was, in fact, suffering as he complained. This evidence on the part of Mrs. Adcock was objected to by appellant on the ground that the same was self-serving and hearsay and not shown to be a part of the res gestæ. The objection was overruled, and appellant saved its bill. But the evidence of Mrs. Adcock did not stop at this point, but her counsel was permitted to ask her if Mr. Adcock, when he first got home told her how he was injured, and if so, to state what he said in that connection. This question was also objected to by counsel for appellant, on the ground that an answer to it would be but hearsay and would be self-serving, and that such evidence would not be admissible under the rule of res gestæ, but the objection was overruled by the trial court, and Mrs. Adcock answered, substantially, that Mr. Adcock, when he got home at 10 o'clock, did tell her how he was injured and stated to her that while he was walking from one side of the boat to the other in the discharge of his duties at the log boom, he fell astride the cross-plank or timber and injured himself in the locality of his urinary organs, and that he was suffering from the injury, and told Mrs. Adcock to send for a doctor. To this action of the court appellant saved a full bill, and the court's action in that connection is properly assigned as error.

But Mrs. Adcock was further interrogated by her counsel in this connection, and she was asked if she sent for a doctor for Mr. Adcock, to which she replied that she did,

and that the doctor got to their home between two and three hours thereafter, that is to say, the doctor didn't arrive until two or three hours after Mr. Adcock had reached home at 10 o'clock. She was then asked by her counsel if Mr. Adcock complained of pain and suffering to the doctor when he got there, to which she replied that he did, and indicated to the doctor the locality of his pain and suffering. To this question and answer appellant objected, on the ground that a statement by Adcock to the doctor so long after the claimed injury, as to Adcock's pain and suffering, would be self-serving and hearsay, and not a part of the res gestæ but the court overruled the objection and appellant saved the bill. But Mrs. Adcock was further interrogated by her counsel in this connection, and she was asked, substantially, whether Mr. Adcock told the doctor how he sustained the injury of which he was complaining, and the question was objected to and the objection overruled, and Mrs. Adcock was permitted to answer that Adcock told the doctor that the injury of which he was complaining was caused by his falling astride of the plank or timber leading from one side of the log boat to the other, while engaged in the discharge of his duties at the log boom, and all of this was objected to on the ground that it was not shown to be any part of the res gestæ, and could not be, and that such declarations, if made by Tom Adcock, were self-serving, and their repetition by the witness hearsay. All objections were overruled, and appellant saved its bill. After this, counsel for appellant moved to strike out all the testimony of Mrs. Adcock which had been objected to, as above shown, and this motion was overruled.

Now it is appellant's contention here that none of the evidence of Mrs. Adcock which was objected to, as above shown, was admissible for the reason that it was self-serving and hearsay and was not shown to be part of the res gestæ. We have already stated that the only evidence in the record as to when, where, and how Adcock was injured, if he was injured, was that of Wiley Morris, and he fixed the time of the injury at about 7:30 in the morning. We have already shown, also, that Tom Adcock never got home after the injury, if there was one, until about 10 o'clock following. Where he went in the meantime, whom he saw, what he did, what the condition of his mind was, what was said, if anything, by any one to him, this record does not disclose. Therefore, it must be admitted that Adcock's statements and complaints to his wife, as testified to by her, if made, were made some two hours and a half after the claimed injury, and after he had gone from the place of injury to his home, some quarter of a mile distant.

[2] Now, under such facts and circumstances as we have detailed them, were the declarations and complaint of Adcock to his

wife as to his pain and suffering when he reached home at 10 o'clock admissible as res gestæ? As a general rule, all declarations or exclamations uttered by a party who has been injured and which are contemporaneous with and accompany the injury, and are calculated to throw light upon the motives or intentions of the party making the declaration or complaint, are admissible as part of the res gestæ. Such has been declared to be the rule by the Supreme Court of this state in Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902. But if the admission of evidence should be confined to this rule, then it is clear that the declarations and complaints of Tom Adcock to his wife at the time he got home, two hours and a half after the injury, without any showing as to what he had done, whom he had seen, with whom he had talked, or what the condition of his mind had been in the meantime, were not admissible; for certainly such declarations and complaints were not contemporaneous with, and did not accompany, an injury which occurred, if at all, two hours and a half before. Judge Gaines, however, in the Anderson Case, after admitting the general rule to be as above stated, among other things said:

"Very respectable authorities restrict the doctrine of res gestæ within the limits indicated by the foregoing definition, and exclude all declarations which are a narrative of past occurrences. This is a convenient and salutary rule, and probably the more logical one; and if it were an open question in this state we should hesitate long before adopting another. Another rule, applied in many of the American courts at least, is to admit as parts of the res gestæ not only such declarations as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design"—citing a number of authorities.

In Railway Co. v. Barron, 78 Tex. 423, 14 S. W. 698, Chief Justice Stayton quoted with approval 1 Greenl. 102, as follows:

"Whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings made at the time in question are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence and often the only proof of its existence. And whether they were real or feigned is for the jury to determine. * * * So also the representations by a sick person of the nature, symptoms, and effects of the malady under which he is laboring at the time are received as original evidence."

[3] Under this rule, as we understand it, Mrs. Adcock's testimony as to Adcock's complaint of injury and suffering when he got home at 10 o'clock was, we think, admissible. It was appellees' contention not only that

Adcock was injured while performing duties of his employment, but that the character and extent of the injury was such that it resulted in his death. Therefore, Adcock's bodily pain and suffering at the time he got home, if there was such, was a material inquiry in the case, as bearing on the nature, symptoms and extent of the injury, if there was such, even though such declarations of pain and sufferings were made two hours and a half after the injury. Railway Co. v. Shafer, 54 Tex. 648. The evidence was not shown to be admissible as res gestæ of the original injury, but such declarations of pain and suffering and their locality were admissible as res gestæ of the pain and suffering of Adcock, at the time they were made. Whether such suffering was real or feigned was a question for the consideration of the jury, and the time elapsing after the injury would, we think, go to the weight of the evidence and not its competency. But was Adcock's statement to his wife, when he reached home, to the effect that he was injured on the boat while discharging the duties of his employment, admissible under the rules of res gestæ? In other words, under the circumstances and facts relative to the making of the statements and declarations by Adcock, if they were made, that is the long time that elapsed, after the claimed injury, the failure to show what Adcock had done, whom he had seen, and with whom he had talked in the meantime, etc., was his statement to his wife as to the cause of his injury admissible as res gestæ? We have concluded that it was not. That statement, if made, as to the cause of the injury, was but the statement of a past event, which had taken place several hours before, and was not the expression of present pain and suffering, and we know of no case in Texas which has gone to the extent of making Adcock's statement to his wife as to the cause of his injury admissible as res gestæ.

The cause of Adcock's injury in this case was the first question to be determined. It was, of course, necessary also, before recovery could be had by appellees, to show that the injury, if it occurred while performing his duties, was the cause of or materially contributed to his death. But the statement to his wife that he was injured while performing the duties of his employment and how it came about, was clearly not admissible. Railway Co. v. Gill (Tex. Civ. App.) 55 S. W. 386; Railway Co. v. Stone (Tex. Civ. App.) 25 S. W. 808; Railway Co. v. Crowder, 70 Tex. 222, 7 S. W. 709; Roth v. Travelers', etc., 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97. In the case last cited, the injured person claimed that his injury was caused by a fall on ice while skating. After the injured person had returned from the skating where the injury was claimed to have occurred, he complained of pain and suffering in his head, and also stated where and how the injury occurred.

Judge Brown, in disposing of one of appellant's assignments of error in admitting the testimony, held that the injured party's declaration of pain and suffering in his head was properly admitted, but that his statement as to how the injury was caused was not admissible, giving the reasons for such holding. We are aware that the Dallas Court of Civil Appeals held, in Railway Co. v. Moore, 24 Tex. Civ. App. 489, 59 S. W. 282, that a statement by an injured person as to how he was injured, made several hours after the claimed injury, was admissible in that case as res gestæ, but it is very clear from the decision that such conclusion was reached because it was clearly shown upon the trial of that case that the declaration or statement by the injured person as to the cause of the injury was made immediately after regaining consciousness. In other words, by the injury, Moore, in that case, was rendered immediately unconscious and remained so until the moment he made the statement. Of course, it was held in that case that Moore's statement was a part of the res gestæ of the original injury.

Under the authorities cited, we have no doubt that the court was in error in this case in admitting, over appellant's objection, Mrs. Adcock's evidence to the effect that her husband told her that he was injured on the boat while performing his duties.

[4] We now come to the question as to whether Mrs. Adcock's testimony as to what Adcock told the doctor, between two and three hours after getting home, as to how he sustained his injury, was admissible. Unquestionably, after such long lapse of time, the statement made by Adcock to the doctor as to how his injury was caused was not, under the facts as we have stated them above, admissible as res gestæ of the original injury. Neither was the statement as to how the injury occurred any expression of Adcock's pain and suffering at that time. On the contrary, it was but the statement to the doctor of a past event. We can see no more reason why Mrs. Adcock should have been permitted to reproduce such statement made to the doctor than had such statement been made to Adcock's lawyer. This point was decided in Railway Co. v. Smith (Tex. Civ. App.) 82 S. W. 787. The statement admitted over the appellant's objection in the Smith Case was made by the injured party to a physician after the injury. The court said:

"The court should have sustained the objection to the evidence to Dr. Clay, as complained of in the fifteenth assignment of error. The statement to him by the appellee as to how he got hurt was not admissible."

It follows that it is our conclusion that the court was in error in permitting Mrs.

Adcock, over appellant's objection, to testify that Tom Adcock told his physician, some four or five hours after the claimed injury, how the same was caused. It was clearly not a part of the res gestæ, and was hearsay and self-serving.

[5] Was the error of the trial judge in admitting this improper testimony on the part of Mrs. Adcock, prejudicial to appellant in this case? We have already shown that the only evidence as to how Adcock's injury, if he received one, was caused, was that of Wiley Morris, and we have serious doubts whether any intelligent and fair jury would have been willing to give credence to Morris' testimony as to the cause of Adcock's injury, had his testimony on the point stood alone. But the court, in effect, by its ruling, said to the jury that Mrs. Adcock's evidence as to what her husband told her and told the doctor as to when and how he was injured was before them and proper for their consideration, and it is very probable from this record that the jury based their finding in favor of appellees upon such evidence of Mrs. Adcock. It follows, therefore, that we are of opinion that the admission of this improper evidence was highly calculated to cause the jury, and probably did cause the jury, to render their verdict against appellant. The judgment will therefore be reversed, and the cause remanded.

We have not overlooked other assignments in appellant's brief, but have considered them all, and, believing that none of them are well taken, they are overruled.

Reversed and remanded.