## GOODEN v. ÆTNA LIFE INS. CO.
### No. 2798.

Court of Civil Appeals of Texas.
Beaumont.
June 20, 1935.

A. T. Norman, of Houston, for appellant.

Fulbright, Crooker & Freeman and Lester Settegast, all of Houston, for appellee.

O'QUINN, Justice.

This is a compensation insurance case. Shippers Compress Company of Houston, Harris County, Tex., was the employer, Sebastian Gooden the employee, the Ætna Life Insurance Company the compensation insurance carrier, and appellant, Lealer Gooden, the claimant.

Sebastian Gooden died on December 22, 1932, and his wife, Lealer Gooden, filed claim for compensation for his death with the Industrial Accident Board on March 28, 1933. The board made its final award on May 12, 1933, and Ætna Life Insurance Company duly gave notice of its intention to not abide said award, and that it would appeal from same, and within twenty days after giving such notice filed this suit to set aside said award. It was agreed that $11.25 was the average weekly wage of Sebastian Gooden on April 14, 1931.

Appellant, Lealer Gooden, filed answer and cross-action, which, after pleading the jurisdictional requisites alleged that Sebastian Gooden was injured on April 14, 1931, in the course of his employment with the Shippers Compress Company while placing or releasing the metal bands on cotton bales which were under great pressure, and that while so engaged a large metal bar or lever was released and struck him in the right side and back causing something to slip or break in his side and back, and that he died as a result of said injury.

The case was tried to a jury, but at the conclusion of the evidence the court instructed the jury to return a verdict for appellee which was done and judgment accordingly entered. Motion for a new trial was overruled, and the case is before us on appeal.

The record discloses that the deceased, Sebastian Gooden, for several years prior to April 14, 1931, had been employed by the Shippers Compress Company. On April 14, 1931, he was working in what they called the "pickery gang." His duty was to assist in removing damaged cotton from bales received at the compress, this being done by the men prying open the buckle on the metal bands of the cotton bale with a gooseneck metal bar about two feet long and some three-fourths of an inch in diameter, and then picking by hand the damaged cotton from the bale, and then refastening the bands around the bale. On this day Gooden and another negro named Jim Simmons were working together. They opened and picked two bales, finishing them at about noon. They continued to work that afternoon until quitting time, 5 o'clock, but at what kind of work is not shown. Apparently no others were working with or near them or in sight of them on this day.

Appellant alleged that on April 14, 1931, Sebastian Gooden, her husband, received the injury from which she alleged he died. There was no proof that he received any kind of injury on that date. Jim Simmons, the employee with whom he was working, was placed on the stand as a witness for appellant. He testified that Gooden did not receive an injury, and that he did not complain of any injury. According to the allegations in her petition, Gooden was injured while working with a bale of cotton. The undisputed evidence shows

that only two bales were worked that day, and they were completed before noon. Gooden continued to work all the afternoon, and then walked to his home about a mile from the plant. There being no evidence showing that he received the injury alleged, or in fact any injury, while working, the court did not err in instructing the verdict.

But appellant insists that other testimony was offered, which if same had been admitted the injury alleged would have been shown, and assigns error in the court's sustaining appellee's objection to same. The rejected testimony was:

██ (a) After Lealer Gooden had testified that she was the wife of deceased, Sebastian Gooden, that they were married in 1919 and lived together until his death, December 22, 1932, that deceased had worked for the Shippers Compress Company for about nine years, and was working for it on April 14, 1931, that he was healthy, worked regularly, and had not been sick, it was proposed to prove by her that when he got home about 5:30 p. m. on April 14, 1931, he told her that he got hurt while working on a bale of cotton that day, and the manner in which he received the hurt and its effect on him. Appellee objected to the admission of this evidence because it was hearsay, self-serving, not res gestæ of the alleged injury, and incompetent, which objections were sustained and the evidence rejected. In her petition appellant alleged that deceased was injured on April 14, 1931, while unfastening the bands around a bale of cotton while same was under great pressure, by a metal bar or lever used in loosening the metal bands in some manner being released, striking him on the right side and back causing something to slip or break in his side and back causing him great pain and shock, from which he suffered intense pain and constantly grew worse, was never able to return to work, was constantly under the care of a physician, lost weight, developed running sores on either side of the back at or about the point of the injury, resulting in slivers of bone being removed from the sores, and from all of which he finally died December 22, 1932.

The undisputed evidence shows that Gooden and his fellow worker Simmons worked only two bales of cotton on April 14, 1931, and that they finished these before noon. That they worked all the afternoon until quitting time, 5 p. m., but at what kind of work not shown. That after quitting, Gooden walked to his home about one mile from the plant. That he made no complaint of an injury to any one at the compress plant that day. What he did after finishing working the two bales of cotton until 5 p. m., quitting time, with whom he talked, if any one, what was the condition of his mind, and whether he suffered pain is not disclosed. His statements and complaints to his wife, proposed to be testified to by her, if made, were at the very least five and a half hours after the claimed injury, and after he had gone from the place of injury to his home, a mile distant.

Under the facts detailed, were the statements and complaint of Gooden to his wife as to his alleged injury and his pain and suffering when he reached home admissible as res gestæ of the alleged original occurrence—the injury. The general rule is that all declarations made by an injured party which are contemporaneous with and accompany the injury, and are calculated to shed light upon the motives or intentions of the party making the declaration or complaint, are admissible. International & G. N. Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 1040, 27 Am. St. Rep. 902. In the cited case, Judge Gaines, after stating the general rule as above, further said: "Another rule, applied in many of the American courts at least, is to admit as parts of the res gestæ not only such declarations as accompany the transaction, but such also as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design." Without discussing other authorities, we conclude that what Gooden told his wife when he reached home as to his *then* being in pain, what she saw when she examined his person, and what she did to relieve his suffering, were admissible as to his *then* condition, and of the misery he *then* suffered; but it must be kept in mind that the object of the proffered testimony was to prove that Gooden was accidentally injured while in the course of his employment, and that such injury caused his death some year and a half later. To recover, the injury and the manner of its

reception must be first established. Under the authorities, the statement to his wife that he was injured while in the performance of his duty of his employment, and how the injury happened, was clearly not admissible. Lumbermen's Reciprocal Ass'n v. Adcock (Tex. Civ. App.) 244 S. W. 645; Metropolitan Casualty Ins. Co. v. Woody (Tex. Civ. App.) 80 S.W.(2d) 771 (writ dismissed); Roth v. Travelers' Protective Ass'n, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97.

■ (b) It was proposed to prove by Miller Gooden, a brother of deceased, that he worked for the Shippers Compress Company, and that on the evening of April 14, 1931, after quitting time (5 p. m.) he walked home with his brother Sebastian Gooden, but did not go in the house. That on the way Sebastian told him that he (Sebastian) got hurt opening a bale of cotton, but did not tell the time of day it happened. Appellee's objection that the evidence was hearsay, self-serving, no part of the res gestæ, and inadmissible was sustained and the testimony rejected. The undisputed evidence showed that only two bales of cotton were "picked" that day by deceased and his co-worker Simmons; and they were completed before noon. That deceased worked all the afternoon until quitting time, 5 p. m., and went home without making any complaint or report of any injury to the manager. Under the authorities above cited, the evidence was not admissible.

■ (c) Jim Simmons, a negro fellow workman, and who worked with Sebastian Gooden, deceased, on April 14, 1931, the day that it was alleged that he was injured while working on a bale of cotton, was placed on the stand as a witness for appellant. He testified positively that Gooden did not receive any injury that day, and further that Gooden made no complaint of having been hurt, or of suffering pain. That they "picked" only two bales of cotton that day and finished them before noon. That they worked all the afternoon until quitting time (5 p. m.) when they left. Later it was sought to impeach Simmons by showing that "he was expected to testify" that "Sebastian complained that when the buckle broke it struck him in the side, and then him and Sebastian headed the bale of cotton and when they headed it up Sebastian said 'oh, I sure hurt my

back.'" The expectancy that Simmons would so testify was proposed to be shown by Miller Gooden, brother of Sebastian, by whom it was proposed to prove that "he (Simmons) told me that him and Sebastian was working together and he said that Sebastian opened up a bale of cotton with a bar called a goose neck, and he said when he put the goose neck in the buckle to break the buckle that when the buckle broke it struck him in the side, and then him and Sebastian headed the bale of cotton up and when they headed it up Sebastian grunted and said, 'oh, I sure hurt my back.'" On objection this impeaching testimony was refused. • Simmons was appellant's witness. There was no showing that appellant or her counsel consulted with him before they put him on the stand and that he then stated that he would testify as they expected him to; in fact, it was not shown that Simmons had at any time told appellant or her counsel what he would testify. In the absence of the witness misleading them as to what his testimony would be, the impeaching testimony was not admissible. No effort having been made to ascertain what the testimony of the witness would be, no surprise was shown. Aside from this, the impeaching evidence was not admissible for the reason that no predicate was laid for its admission.

■ It was also sought to impeach Simmons' evidence by showing by Miller Gooden that Simmons told him that he would not mind testifying and telling what he knew but was afraid he would lose his job. This was not permissible for the reason that if Simmons told Miller Gooden that he was afraid to testify because he might lose his job then appellant knew or could have known this by interviewing Simmons before offering him as a witness, and not having done so, could not take a chance on his testimony and when disappointed in its nature, then seek to impeach him. Furthermore no predicate was laid for the impeaching evidence.

■ Neither did the court err in refusing to permit Lealer Gooden to testify that Simmons was prejudiced against her because she and Simmons' stepdaughter had a fight after Sebastian Gooden was alleged to have been injured.

The judgment should be affirmed, and it is so ordered.

Affirmed.