| | American National Insurance |
| --- | --- |
| (seal) | Company |
| | By: W. L. Vogler ok |
| ok | Vice President |
| W E G | Attest: L. Mosele |
| | Secretary |

(acknowledgments)

GENERAL ACCIDENT, FIRE & LIFE
ASSUR. CORP., Limited, et al.

v.

PERRY et al.

No. 12646.

Court of Civil Appeals of Texas.

Galveston.

Jan. 14, 1954.

Rehearing Denied Feb. 4, 1954.

Otto P. Moore, Sr., Columbus, and Fulbright, Crooker, Freeman, Bates & Jaworski, Sam H. Hood, Jr., and Royce R. Till, Houston, for appellants.

Massey, Hodges, Moore & Gates, W. E. Henderson and Hollis Massey, Columbus, for appellees.

HAMBLEN, Chief Justice.

This is an appeal from a judgment of the District Court of Colorado County, Texas, awarding appellees herein benefits under the Workmen's Compensation Act of the State of Texas for the death of John Henry Perry, husband and father, respectively, of the appellees. Appellees' claim to benefits was based upon the proposition that the death of John Henry Perry on May 1, 1952, occurred as a result of accidental injury sustained by him while acting in the course of his employment for Colorado County, Texas. After an adverse finding

by the Industrial Accident Board appellees resorted to the District Court. The case was tried before a jury, which found that the deceased sustained an accidental injury in the course of his employment which was a producing cause of his death and that he did not die solely of natural causes. The appealed-from judgment was rendered upon such verdict.

In the trial court appellant, who was there defendant, filed a motion for instructed verdict at the conclusion of plaintiffs' case and at the conclusion of the evidence, which were overruled. After the verdict was received appellant filed a motion for judgment non obstante veredicto, which was likewise overruled. All of such motions were grounded upon the proposition that there was no evidence, or that the evidence was insufficient, to show that the deceased sustained an accidental injury which was a producing cause of his death.

On this appeal appellant complains of the action of the trial court in so overruling said motions in seven of its eleven asserted points of error. The remaining four points presented by appellant are directed to the form of the hypothetical question propounded to medical witnesses offered by appellees and to the failure of the trial court to submit certain requested defensive issues. This Court is of the opinion that the appellant is correct in its first seven points of error and that all of such points should be sustained for reasons which will be discussed. Since the case was fully developed in the trial court and since our conclusion as to such points, if correct, requires a reversal of the case and rendition of judgment for appellant, it becomes unnecessary to pass upon the error asserted by appellants' points 8 to 11, inclusive.

The following facts which are undisputed are necessary to our discussion: John Henry Perry, deceased, at the time of his death was 59 years of age and was employed by the Commissioners of Colorado County as a member of a road maintenance crew and had been so employed for about five years. His principal duties involved the building and repairing of fences and the operation of a John Deere Tractor to which was attached a sickle-type mowing blade. On the day of his death the deceased went to work at the usual morning hour and was apparently well and feeling good at that time. He made no complaints to either his wife or to anyone who saw him at the time he commenced work. At approximately 1:00 p. m. on the day in question the deceased stopped and talked with Mr. J. E. McDonald. He appeared to be normal at that time. As he left Mr. McDonald he lighted a cigarette and made reference to a cloud that was gathering and said he would have to hurry to get through and come back and get into Eagle Lake. Before making this remark he had put up the umbrella on the tractor that shaded him from the sun. Mr. McDonald saw the deceased about thirty minutes later operating the mower on one of the roads. At approximately 3:00 p. m., or approximately two hours after having talked with the deceased, Mr. McDonald testified that he saw the deceased walking toward an intersection of two roads, which corner is about 200 to 250 feet from where Mr. McDonald lived. At this time the deceased was walking down Adkins Road toward its intersection with Chesterfield Road and about 100 to 150 feet from such intersection. Mr. McDonald observed the deceased as he walked the 100 to 150 feet and observed that when he reached the intersection he looked in each direction, up and down Chesterfield Road, and that he reached into his left-hand shirt pocket and secured his tobacco and rolled a cigarette. The deceased, according to Mr. McDonald, appeared to be normal in every respect at the time he observed him walking, and he was walking at a normal gait.

Approximately ten minutes later the witness McDonald was notified that Mr. Perry was dead at the intersection. He went to the intersection and observed that there was no apparent evidence of violence having been done to the deceased; that there was no evidence of a struggle; that about two-thirds of the cigarette which he saw Mr. Perry light had been smoked, and

that the match with which it was apparently lighted was on the ground nearby; that Mr. Perry's glasses were still on and that his hat was folded under his head on the ground; that there was no mud on Mr. Perry's clothes or on his shoes and no perspiration or sweat on his face or clothing. Mr. McDonald testified that it was a warm day and that he would guess that the temperature was about 80°.

The tractor which the deceased had been operating was found approximately one mile north of the point where he died, on Adkins Road. The two right wheels had apparently slid into a shallow ditch about a foot deep and the rear axle housing was grounded on the shoulder of the road. The tractor appeared to have been moved backward and forward for a distance of about 18 inches and had slid about a foot toward the ditch. The end of the cutting blade was next to a fence post. The umbrella on the tractor was raised.

The witness, J. O. Walker, Sheriff of Colorado County, testified that when he arrived at the point where the tractor was, in the afternoon, someone had stepped on the weeds or grass near the end of the cutting blade. He did not recall whether he had sent someone down to check the tractor before he went there or not. There were no pry-poles about the tractor.

The witness, Glenn Kveton, County Commissioner, under whom the deceased worked, testified that he went to the tractor the following morning but sent two of his men to check on it the afternoon of Mr. Perry's death. There was evidence that a tractor, the wheels of which were mired, would be more difficult to turn than one not mired.

No autopsy was performed upon the deceased. Two medical witnesses testified that in reasonable probability the deceased died as a result of coronary occlusion, commonly called a heart attack, or of cerebral hemorrhage. These opinions were expressed in response to hypothetical questions propounded to the witnesses by appellees, which questions contained the assumptions that the deceased was driving the tractor at the time it became mired, that he had undertaken unsuccessfully to get the tractor out of the ditch by driving backward and forward and that he had thereafter walked the distance of approximately one mile from the tractor to the point where he was found dead. The medical witnesses then expressed the opinion that the coronary occlusion or, alternatively, the cerebral hemorrhage, which in their opinion had most probably caused the deceased's death, had been produced by overexertion by the deceased in the course of performing the acts assumed in the hypothetical question.

In appellants' points of error wherein complaint is made of such hypothetical questions the contention is made and supported by forceful and analytical argument that the question contained facts and assumptions not supported by the evidence. We have said that it is unnecessary to pass upon the error thus asserted. This for the reason that upon cross-examination both medical witnesses testified that in addition to the facts assumed in such questions, their opinion was based upon the following additional assumptions on their part: That the deceased became exasperated or angry as the result of his tractor becoming mired; that the deceased made strenuous efforts and exerted himself in endeavoring to remove the tractor; that the deceased was in a hurry and that his walking from the point where the tractor was stuck to the point where he died was unusual activity for the deceased. The witnesses further stated that without one or more of such additional assumptions they would be unable to express the opinion that the coronary occlusion or cerebral hemorrhage was caused by the facts stated in the original hypotheses. Thus, even if it be conceded that the facts assumed in the hyopothetical question were permissible inferences to be drawn from the facts and circumstances which the probative evidence does support, it becomes apparent that the additional assumptions necessary to the establishment of a causal connection between proven fact or permissible inference and the death of the deceas-

ed can be reached only by piling presumption upon presumption and drawing inference from inference.

In 17 Tex.Jur. 247, it is said, "Inferences can never be made to subserve the primary function of evidence, and no inference of fact should be drawn from an uncertain premise. The fact or facts relied on to support a presumption or inference must be proved by direct evidence the same as if they were in issue. A presumption of fact cannot rest upon a fact presumed, or, in other words, one presumption cannot be based upon another presumption, nor an inference of fact upon other inferences."

■ We have carefully examined the statement of facts presented with this record and can find therein no evidence, circumstantial or otherwise, justifying the additional assumptions which the medical witnesses described as necessary to their medical opinions. From our review of the testimony, such additional circumstances constitute nothing more than surmise and speculation and violate the principle of law above quoted prohibiting the piling of presumption upon presumption and drawing inferences from inferences.

None of the authorities cited by the litigants in their briefs are identical factually to the case here considered. The authorities have been carefully examined and it is the opinion of this Court that the rules of law which are applicable and controlling are set forth in the following cases: Southern Casualty Co. v. Flores, Tex.Com.App., 1 S.W.2d 260; Texas Employers' Ins. Ass'n v. Young, Tex.Civ.App., 231 S.W.2d 483; Houston Fire & Casualty Ins. Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442; and in Gorman v. American General Ins. Co., Tex. Civ.App., 179 S.W.2d 814.

No useful purpose would be served by reviewing the authorities cited by appellees. They are distinguishable from the instant case in that in each there existed direct probative evidence of exertion or strain, based upon which, standing alone, medical witnesses were able to express an opinion as to the cause of death or injury. Such evidence is not present here. On the contrary, while we consider it unnecessary to the decision of this case, the only evidence bearing upon the situation negatives the assumptions which the medical witnesses stated were necessary to their conclusions as to the producing cause of death. Mrs. Rosalie Perry, wife of the deceased, testified that her husband was a man of even temper, not excitable, that he had stuck his tractor on other occasions and that it did not excite or irritate him. She further testified that the deceased was accustomed to frequent long walks while hunting, which had produced no complaints or apparent ill-effects. The assumption that the deceased was in a hurry immediately prior to his death cannot, we feel, be inferred from his statement to the witness McDonald made some two hours earlier. Particularly is this true in view of the compelling testimony to the effect that only ten or fifteen minutes prior to his death, appellees' same witness observed the deceased walking at a normal gait, pausing to roll a cigarette, and that immediately after death an examination disclosed no evidence of perspiration or sweating. When interrogated as to the hypotheses which such testimony justifies, appellees' medical witnesses stated in effect that it was equally probable that the activities of the deceased, upon which their original opinion was based, were not causally connected with his death.

In Perren v. Baker Hotel of Dallas, Tex. Civ.App., 228 S.W.2d 311, 317, the court uses the following language, which is particularly applicable here: "Where circumstances are equally consistent with the existence and nonexistence of an ultimate fact sought to be established, such circumstances are wanting in probative force as any evidence tending to establish the existence of the ultimate fact."

■ In our opinion the competent admissible evidence introduced upon the trial, when viewed in its entirety in the light most favorable to the contentions of appel-

lees, was wholly lacking in probative force to serve as the basis for a fact finding that the deceased sustained an accidental injury which was a producing cause of his death. For that reason, we feel that the trial court should have granted the motion for an instructed verdict presented by appellant and that the failure to grant same was error, necessitating a reversal of the case.

Reversed and rendered.