Irene BEAN et al., Appellants,

v.

HARDWARE MUTUAL CASUALTY COMPANY, Appellee.

No. 6387.

Court of Civil Appeals of Texas.

Beaumont.

June 29, 1961.

Rehearing Denied Sept. 6, 1961.

Leonard E. Choate, Waldman & Smallwood, Beaumont, for appellant.

John H. Benckenstein, Beaumont, for appellee.

McNEILL, Justice.

This is a Workmen's Compensation suit. The action was instituted in the district court by Irene Bean, surviving wife of Levi Bean, and by Charles Smallwood as next friend of Myrtle Bean and Ethel Fay Bean, minors, to recover compensation on account of an injury sustained by Levi Bean, employee, which resulted in his death. At the close of all the evidence, in a trial before a jury, the court instructed a verdict for the defendant.

In due time plaintiff, Irene Bean, gave notice of appeal and filed her appeal bond. The appeal bond, which was given and approved, is as follows:

"Whereas, in the above numbered cause pending in the 58th Judicial District Court of Jefferson County, Texas, and at a regular term of said court, to wit, on the 15th day of February, 1960, said court entered a judgment, to which the plaintiffs, Irene Bean, et al, duly excepted and gave Notice of Appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District sitting at Beaumont, Texas.

"Now, Therefore, Know All Men By These Presents, that we, Irene Bean, as principal, and Old Colony Insurance Company, a private corporation, as surety, acknowledge ourselves bound to pay to the said Hon. L. R. Blakeman, District Clerk of Jefferson County, Texas the sum of $1800.00 conditioned that the said Irene Bean, appellant, shall prosecute her appeal with effect, and shall pay all the costs which have accrued in the court below, and which may accrue in the Court of Civil Appeals and the Supreme Court.

"Witness our hands this 29 day of February, 1960.
"/s/ Irene Bean
 Irene Bean, Principal
 "Old Colony Insurance Company
 By /s/ Douglas Williams
 Attorney in Fact
 Surety"

Although all plaintiffs excepted to the judgment and gave notice of appeal properly, it is seen from the above that the only plaintiff giving an appeal bond is Irene Bean. Motion has been made in this court by Irene Bean and the next friend for authority to amend the appeal bond so as to include the next friend of and for said minor plaintiffs. Rule 430 Texas Rules of Civil Procedure, provides that when there is a defect in substance or form in an appeal bond the appellate court may allow same to

be amended on such terms as the court may prescribe. The intent of this rule is to give a liberal construction to the efforts of an appellant so as to insure his cause shall be heard by an appellate court. United Ass'n of Journeymen, etc. v. Borden, 160 Tex. 203, 328 S.W.2d 739. The transcript containing the above quoted appeal bond was filed in this court on April 13, 1960. On September 14, 1960, brief was filed by appellants Irene Bean and minor children of Levi Bean, deceased, above described. Appellee filed its brief October 7, 1960 and in it took the position that since Irene Bean was the only person perfecting the appeal, the judgment had become final against Charles Smallwood as next friend of the minors. Thereafter on October 27, 1960, motion was filed in this court by Irene Bean and Charles Smallwood as next friend of the minors praying that the next friend be permitted to file an amended appeal bond so as to include the next friend of the minors, asserting that through mistake, oversight or inadvertence the original appeal bond was signed only by Irene Bean as principal. We think the record so indicates the oversight or mistake. This motion was opposed by appellee on the ground that since the next friend representing said minors had failed to file any instrument attempting to be an appeal bond within the time allowed by Rule 356 permission granting the right to file an appeal bond in their behalf should be denied. It has been held in numerous cases that the time for filing an appeal bond is jurisdictional and cannot be waived. Montgomery v. Coates, Tex.Civ. App., 314 S.W.2d 671; 3 Tex.Jur.2d, Sec. 299, p. 553. And consequently on first impression we were inclined to agree with appellee that the power to allow amendments to an appeal bond could not take the place of the requirement that each appealing party shall file an appeal bond within the time prescribed by Rule 356. See Estes v. Estes, 54 Tex.Civ.App. 561, 118 S.W. 174. But upon examination of the holdings in Lusher v. First National Bank of Fort Worth, Tex.Civ.App., 260 S.W.2d 621;

Marlett v. Brownfield, Tex.Civ.App., 140 S.W.2d 353, and the cases cited in these authorities, we have concluded that any instrument bearing reasonable earmarks of an appeal bond having been filed in due time by any appellant gives this court jurisdiction of the appeal and justifies this court in the circumstances of this case in allowing the other appellants, who have given proper notice of appeal but had not heretofore joined in the appeal bond, to file a proper one in this court. While the opinion in the Lusher case, supra, 260 S.W.2d at page 625, declined to reach the precise question here presented, we can see no real difference in that case and the present case. The next friend of said minors is, therefore, granted leave to file within ten days a proper appeal bond herein, subject to the approval of the clerk of this court.

## On The Merits

The employee, Levi Bean, worked as an iron cutter for the Texas Metal Works in Beaumont for some 15 years. This concern operated a blacksmith shop and had equipment to handle pieces or billets of iron and metal. Some pieces of this metal were larger or longer, and therefore heavier than others. It was Levi's duty to bring these pieces of metal from a rack outside the blacksmith shop into the shop and place the pieces of metal on rollers where electric saws sawed them into sections for further operations. The metal was brought into the shop by means of a chain hoist that swung from a metal I beam suspended on rollers between two overhead tracks, and in order to bring this metal into the shop the employee would fasten a chain around the billet he desired, pull on the chain, raising it to the desired height and then push the piece of metal along underneath the I beam into the shop and by pulling on the chain it could be lowered upon a series of rollers for cutting into pieces. In addition to bringing in this metal, Levi was also required to move the sections cut from the billets brought in from one place to another in the shop. He commenced work for the com-

pany about 1940. In 1953 he sustained a light stroke to his right side which caused him to be off work about two and one-half months. He recovered fairly well from this experience, but thereafter dragged his right foot slightly.

Appellants claim that Levi sustained an injury in the course of and originating in his employment on or about March 16, 1956. His widow testified that on the morning of March 16, 1956, Levi ate a hearty breakfast and went to work. That night, sometime shortly after five o'clock, he returned home, was real sick and looked very bad to her; he made complaint of pain in his chest over his heart. He ate no supper and slept very little that night. He and Irene discussed calling a doctor but decided he would go back to work the next morning and let the doctor for the company take care of him. An attempt was made by appellants to prove, at the time he returned on the evening of the 16th, what he told his wife had happened to him at work on the morning of that day but this was excluded and her testimony thereof was preserved by a bill of exception. This bill states that he came home complaining of pain and appellant asked him, "What's wrong? What has happened?" He stated in reply "* * * this morning I was putting on a heavy piece of iron and I took this severe pain in my chest, up over my heart." Appellants urge this testimony was admissible as res gestae as it was made immediately to his wife on his return from work that evening, and that he still had pain arising out of the original transaction or injury. The following authorities, we think, are directly in point and are against appellants' contention: Lumbermen's Reciprocal Ass'n v. Adcock et al., Tex.Civ. App., 244 S.W. 645, 649; Roth v. Travelers' Protective Ass'n, 102 Tex. 241, 248, 115 S.W. 31(7); Gooden v. Aetna Life Ins. Co., Tex.Civ.App., 84 S.W.2d 563; Texas Law of Evidence; McCormick & Ray, 2d Ed., Vol. 1, Sec. 843, p. 627.

In addition to the testimony of appellant Irene Bean, appellants offered testimony of two employees who worked at the same plant during the period of time her husband did. One, Julius Morris, testified as follows: He worked the same dayshift which Levi did and at some time along in March or May, 1956, he could not be certain as to the date, Levi had just brought a piece of steel in from the outside and left it suspended over the rollers, upon which he sat down. At the trial the following question was asked the witness:

"Q. All right; now, then, on this occasion that you have talked about there, that he was sitting down, prior to that time had he ever previous to that time made any complaint to you of shortness of breach?" to which he replied: "A No, sir, not prior to that time, he sure didn't. Just like I afore said, that was the only time; that was the only time; but he hadn't let the iron down, and I asked him—"

The witness then stated that he helped Bean lower the billet onto the rollers. This witness was asked whether pushing the billet into the shop was strenuous work, to which he replied that it depended on its size. He stated that another employee would help deceased bring in heavy billets, and after the occurrence he described, deceased would be helped more than before. The other witness for appellant, James Monroe Pinson, Jr., testified that he usually worked on the nightshift, but he worked daytime for about a week; that on one occasion he saw the deceased, Levi Bean, bringing in a piece of steel and he had drops of sweat falling off of him after he had brought it in; that he pointed his hand to his chest and stated he was hurting there and stated that he was sick; that he looked sick or kind of strained or something; he complained of pain in his chest and went and laid down a few minutes and then came back and went to work in about 20 minutes. Pinson stated this happened about three or four months before deceased stopped working for Texas Metal Works in August, 1956. The witness Pinson testified that since the record shows

he, Pinson, did not work during the day of March 16, 1956, that the record would be correct.

After Bean was discharged or quit the employment in August, 1956, he did little, if any, work. The record reflects that from the time his connection with his employer was severed until November, 1956, he had no physician, although at some indefinite date, about the time he stopped working for Texas Metal Works, according to Irene Bean "He seen Dr. Lewis only: Dr. Seab Lewis." For what reason, or whether one time or more, it was not shown. In November, 1956, he went to Dr. P. G. Byrd, who examined and treated him. Thereafter, Dr. Byrd practically always called upon him at home, usually once a week until he was sent to the hospital in March, 1959. Levi, between August, 1956 and March, 1959, was at home most of the time, and toward the last spent practically all his time in bed. He spent five weeks in a hospital during December, 1956, and January, 1957. His treating physician then was Dr. J. B. Ivers. The doctor stated Bean then had unusually high blood pressure and had hypertrophy of the muscles of the left ventricle of his heart. About a week before he died he sustained a second stroke and was sent to the hospital by Dr. Byrd but he did not attend him there; again his attending physician there was Dr. Ivers. After Bean passed away his death certificate made by Dr. Ivers stated that the cause of death was broncho-pneumonia, due to a cerebral thrombosis. Dr. Ivers ran checks on deceased when he entered the hospital and found he had high blood pressure, which he said produced or contributed to the stroke, and his blood showed a high degree of infection indicative of disease somewhere in the body. Dr. Byrd was called as a witness by appellants. He stated when he started seeing Bean in November, 1956, he was suffering from cardiac failure and hypertension or high blood pressure. He testified:

"A. When I first saw him, afterwards he began to have shortness of breath, began to talk weak, in a heavy tone, and his condition was weaker and he couldn't get around good. He got worse and worse as far as getting around was concerned.

"Q. As time went on, what happened to his mental faculties? A. He was drowzy.

"Q. And was he able to get up and be around the house, or confined to bed, or what? A. Along about the last?

"A. Yes.

"A. Well, he was confined to bed at all times, along about the last."

He further stated that Bean complained almost continually of pain in his chest during the time he waited upon him, and he said that in his opinion the muscles of his heart were diseased and their failure to function contributed to his death. Dr. Byrd was asked a hypothetical question combining what the two fellow-employees testified to with the admitted evidence of the widow, Irene Bean, upon the theory that each of these instances took place on March 16, 1956, and he answered that in his opinion the deceased was suffering acute heart failure at the time, and that acute heart failure continually existed up to the date of his death, March 25, 1959. However, in answering this question as well as all other questions addressed to him involving medical opinion, Dr. Byrd stated that he considered and gave a great deal of credence to what deceased himself had told him as the history of the case, although the court had sustained objections made to any history of his case which had been related to Dr. Byrd by deceased. The doctor further stated that had he had no history as related by the deceased to him the answers to the hypothetical questions would not have been the same. In view of these admissions made by appellants' medical witness, his testimony is without material value. General Accident F. & L. Assur. Corp. v. Perry, Tex.Civ.App., 264 S.W.2d 198. In addition, it is clear the in-

stances mentioned by Morris and Pinson were not the same, and though it cannot be said they did not happen on the same day, the instance referred to by Pinson, according to his own testimony, did not take place on March 16, 1956.

■ Viewing the above evidence in the light most favorable to appellants, as we are required to do, can we say that a jury issue was raised as to whether the deceased sustained an injury in the course of and originating in his employment? Did the deceased's condition from which he died originate in his employment? Nothing unusual happened in his work, work he had done for years and continued to do for four or more months after it is claimed he received injury which contributed to his death. Not a word appears in the testimony of either Julius Morris or James Monroe Pinson, Jr., that the piece of steel the deceased had just brought in by means of the chain hoist was one of the heavier pieces at the plant. For all that appears, since no question seeking to elicit such information was directed to each of them, the steel could have been of the lighter class. There was no showing that the deceased did anything except push one particular billet of metal into the shop. Neither witness was asked whether deceased had lifted any of the parts that had been cut off of any billet or that he was doing any other particular work on either occasion. The effect of neither occurrence incapacitated him for work for at least four months. There was no testimony in either instance that the deceased strained or otherwise overexerted himself. We think this is necessary to show an injury of the kind here claimed. General Accident F. & L. Assur. Corp. v. Perry, Tex.Civ.App., 264 S.W.2d 198; Gorman v. American General Ins. Co., Tex.Civ.App., 179 S.W.2d 814; Theago v. Royal Indemnity Co., Tex.Civ. App., 70 S.W.2d 473; Travelers' Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354.

■ Whether the complaints of the employee in either circumstance testified to was caused by his work or by natural infirmity or by both his work and infirmity, we are left to speculate upon. How near in point of time were the two instances testified to, we do not know. At any rate, he worked regularly and did his usual task thereafter for about four months, and his death did not occur until March 25, 1959, more than three years from the date it is asserted he sustained injury to his heart. To sustain appellants' position it would be necessary to presume that the deceased, on the occasion when it is claimed he sustained the injury, was doing heavy work, that is, handling one of the heavier pieces of steel and from that presume he strained or overexerted himself, and from this conclude that an injury could have been sustained which caused his death three years later. To do so, is to violate the rule which prohibits placing one presumption upon another. Texas Employers' Ins. Ass'n v. Mints, Tex.Civ.App., 10 S. W.2d 220; McDowell v. Security Union Ins. Co., Tex.Civ.App., 10 S.W.2d 782; General Accident F. & L. Assur. Corp. v. Perry, supra. The burden of proving a compensable injury is upon the claimant. It was not met in the present instance. Houston Fire & Casualty Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442; Gorman v. American General Ins. Co., supra.

We have not discussed appellants' points based upon several bills of exception to the exclusion of certain proffered testimony— except the bill (Appellants' 10th point) excluding the testimony of the widow, Irene Bean, as to what Bean on the evening of March 16th told her happened at work that morning. We have examined each of the others as well and are satisfied no material error is shown. In part of them, the record reveals that substantially the same evidence was admitted. For instance, one bill (Appellants' 8th point) complains that the following statement by the witness Morris was excluded by the trial court: "Q. He said he had shortness of his breath; his breath was short. I went out to help him let it down, and he said, 'I had to sit down,

because I have a shortness of breath.' He was sitting down, and I was the one let that iron down." But see quoted question to Morris and his answer thereto in an earlier paragraph of this opinion. Similarly, appellants' 9th point complains that the court excluded the witness Pinson's testimony "he said he felt bad, he was sick, he said he was hurting in his chest," giving p. 60 S.F. where this may be found. We have examined the reference and do not find the latter part of the quotation. But Pinson's testimony was admitted, p. 61 S.F. "He (Bean) said he was hurting in his chest;" "He looked like he was sick, or kind of strained or something"; (p. 62 S.F.) "Yes, he complained of pain. Where did he complain of pain? A. In his chest."

Point 11 asserts the trial court should have allowed the widow, Irene Bean, to testify that on the night of March 16th deceased told her, "I'll tell my foreman and he'll get the company doctor", in connection with the circumstances claimed to have happened to him during the morning of that day (see 10th point above). The quoted statement is hearsay. Williams v. Texas Employers' Ins. Association, Tex. Civ.App., 218 S.W.2d 482; Lumbermen's Reciprocal Ass'n v. Adcock, supra. The trial judge correctly sustained appellee's objection to the voluntary statement of Myrtle Bean, an interested witness, to-wit: "Because he was sick; he couldn't work", in answer to the question of appellant, to-wit: "And after your father quit working for Texas Metal Works, did he hold any regular job with anybody else at any time." The part excluded was not responsive to the question. Besides the evidence would have been cumulative. Appellants' 12th point is overruled.

Point 13 complains that the trial court erred in failing to permit Dr. Byrd to recite the history of the case as told him by the deceased, to the effect that he first had headaches while working, lifting iron. Since Dr. Byrd was called to and did treat him, we think, for the purpose of giving his opinion, but not as independent proof, the excluded evidence was admissible. Federal Underwriters Exchange v. Carroll, 130 S.W.2d 1101, by this court; McCormick & Ray, Texas Evidence, Vol. 1, Sec. 835, p. 610. However, the error was harmless as no independent proof of strain or over-exertion was shown.

Points 14 through 19 assert that the trial court erred in refusing to allow their witness, Dr. Byrd, to answer certain hypothetical questions addressed by appellants to him. No useful purpose will be served to copy in detail the separate circumstances of each point. It is sufficient to refer to the earlier part of this opinion commenting upon the value of the hypothetical questions addressed to Dr. Byrd. Since he placed important credence in what Bean had told him to the effect that he hurt himself lifting heavy iron at the plant, and this was not substantiated by independent proof as a fact, no error is shown. General Accident F. & L. Assur. Corp. v. Perry, supra; Standard Accident Ins. Co. v. Terrell, 5 Cir., 180 F.2d 1. Additionally, there was admitted in evidence several hypothetical questions addressed to and answered by Dr. Byrd sufficient to have developed appellants' case, had the independent proof of strain in lifting the heavier piece or pieces of metal been made.

Appellants' 20th point complains of the action of the trial court in excluding a written statement on a Social Security form signed by Bean May 1, 1957 addressed to Dr. F. W. Sutton which was offered for the limited purpose of showing that Bean asserted therein, "I became unable to work on or about August 1956." We can see no material bearing this statement would have on the present case. Admissible evidence that he was disabled in August, 1956, would be pertinent, but not merely his claim that he was.

Appellants' 21st point complains of the action of the court in refusing to admit a certificate of the Federal Social

Security Administration dated July 30, 1957, certifying Bean was entitled to disability insurance benefits, beginning July, 1957. This certificate is hearsay. In any event, there was evidence otherwise made that Bean was disabled about this time, and the exclusion of the tendered certificate was harmless.

Though overall complaint in the various bills of exception was made that the trial court was too restrictive upon appellants' development of their case, the record shows he allowed them much latitude, as well as time, in presenting their evidence.

Believing the case was properly disposed of below, the judgment is affirmed.