**COMMERCIAL STANDARD INSURANCE COMPANY, Appellant,**

v.

**Andrew CURRY, Appellee.**

**No. 15686.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 19, 1970.

Rehearing Denied Dec. 10, 1970.

Steven C. Oaks, Jonathan Day, Houston, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for appellant.

Wayne Fisher, Houston, Fisher, Roch, Blackstock, McLendon & Gallagher, Houston, of counsel, for appellee.

PEDEN, Justice.

Workmen's Compensation case concerning the proof of causal connection between the onset of the claimant's disability and the work he had been doing. The insurance carrier's appeal from a judgment for the plaintiff is directed to the evidence offered to support the first special issue, which was:

"Do you find from a preponderance of the evidence that a producing cause of the cerebrovascular stroke suffered by Andrew Curry on April 30, 1967, was over-exertion, if any, from his work at Kaphan's?"

The appellant asserts that there was no evidence to support the submission of such issue or, in the alternative, that the jury's affirmative finding in response to it was against the great weight and preponderance of the evidence, contending that the claimant's proof was insufficient as to both over-exertion on the date of the stroke and causal connection between his activities that day and the onset of the stroke.

Andrew Curry had worked as a kitchen helper at Kaphan's Restaurant for several years before he suffered the stroke. It occurred at about 2 P.M. and he had been at work since 8 that morning. He said he didn't know his age; at different times he seems to have stated that he was 51, 58 or 62 years old. He had a third-grade education. His testimony as to his activities on the day of the stroke was not entirely consistent, but it was not clearly contradicted by the testimony of anyone else on the job.

Curry testified that on the day in question he had filled up a large can with ice and had pulled it up a ramp on a dolly into the kitchen. It was hard work. He then spent several hours washing some pots and pans. It is hot in the kitchen where he works, and he works pretty hard. He hadn't taken time out for lunch when he had the stroke at 2 P.M. He had gone back and had brought in another large can full of ice and had emptied all but about thirty pounds of it with a shovel or scoop. He picked up the can and dumped out the last thirty pounds of ice. When he put the can down and picked up the shovel again, he felt a pain in his head and somebody caught him. When he woke up he was in the hospital. It was a strain to him when he picked up the can to dump the ice; it was heavy. On the day in question he was doing the same type of work he did every day.

On cross-examination Curry testified that he had tried to empty the ice from the can but couldn't lift it. He then testified that he couldn't remember about the can and he later related that a cook had helped him pour out the ice. He said the stroke was his first serious sickness.

Dr. J. B. Hicks, who practices internal medicine and had treated the plaintiff at the request of Kaphan's, was called as a witness by the plaintiff. Dr. Hicks testified that when he first examined Curry on the afternoon of April 30, 1967 in the emergency room at Hermann Hospital, Curry was complaining of numbness and weakness on the right side of his body. He had not noticed any pain and had not been unconscious. There was no doubt or confusion in the history as to the sudden onset of symptoms on the job. Curry related to him no symptoms of earlier difficulty.

Physical examination showed a limp right arm and leg with voluntary move-

ment, hyperactive reflexes and no alteration in muscle mass. His blood pressure was only slightly elevated, and there was no evidence of any obstruction of any blood vessels. These symptoms were compatible with a sudden and recent onset of central nervous system damage, some form of brain damage of an organic nature. The doctor's diagnosis, based on reasonable medical probability, was an acute cerebrovascular accident with paresis (incomplete paralysis) of the right side. He felt that the claimant had had elevated blood pressure before April 30, 1967, and that most likely because of this, he had a rupture of a blood vessel serving the motor area of the brain.

Dr. Hicks testified that the degree of activity which Andrew Curry testified he had engaged in on the day in question would tend to elevate further the blood pressure of a man of his age and condition. This added pressure would, in reasonable medical probability, increase the chances of a rupture to a blood vessel in Curry's brain. It is easier for a man in the condition Curry was in to exert himself than it would have been for a younger man or one who had no hypertension.

The following questions were asked by the plaintiff's attorney and these answers were given by Dr. Hicks:

"Q (By Mr. Fisher) Assume, Doctor, that he stood on his feet for a period of time washing pots and pans; that from 8:00 o'clock to approximately 1:30 or 2:00 in the afternoon Mr. Curry had worked steadily without interruption, without any rest breaks, without any lunch; that he was working in a place that had a fire going on some heavy stoves, unair-conditioned; that his work was more or less constant and steady, sometimes harder than at other times, but that it included such things as washing heavy pots and pans; that it included such things as going out to the ice bin and loading up a large plastic or metal container full of ice and pulling that container up a ramp by himself, taking it in and either emptying the container by himself or with some help at a point when he still had thirty to thirty-five pounds of ice in it; and assuming the physical condition that you found on April 30, 1967; and assuming further that within a very short time after the last exertion that I mentioned to you, that of picking up or helping pick up this can with ice in it, that he then walked a few steps or a short distance and had a cerebral stroke.

"Do you have an opinion in reasonable medical probability, Doctor, as to whether the work that he was doing, the activity which I have just asked you to assume, was a precipitating cause of the cerebral stroke and cerebral accident at that time and place, assuming his physical condition and age would have been what it was.

"First, do you have an opinion?

"A Yes.

"Q What is your opinion, Dr. Hicks?

"A That this activity could have contributed to his—

"Q —to cause the cerebral stroke and accident?

"A That it contributed to the incidence of the stroke.

"Q And, of course, I have asked you to assume that he did have some pre-existing hypertension, but the activity in which he was involved could, in reasonable medical probability, or would, in reasonable medical probability, contribute to precipitate the event at that particular place and time, assuming what I have told you to be true?

"A How are you using the term 'contribute to precipitate?'"

"Q  Well, to contribute along with any pre-existing problem he might have.

"A  I would say it could contribute to the cause of the stroke at that time."

On cross-examination Dr. Hicks testified that his examination of Curry revealed indications of hardening of the arteries and hypertension.  That Curry's stroke at Kaphan's could have been caused by one or more things including a thrombosis, an embolism or a hemorrhage.  Assuming that he did the same thing on April 30 that he did every other day out there and that there were no other unusual occurrences or accidents or extraordinary circumstances, Curry could have had the stroke any other day, and the activity of working is just one of many things that could contribute to the cause of the stroke.

■ We affirm the judgment of the trial court.  The jury's answer to Special Issue No. 1 was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.  The testimony of the claimant that he had been working hard from 8 A.M. to 2 P.M., had been on his feet in a hot room and felt the pain in his head just after he had put down the can holding thirty pounds of ice is probative evidence to support the jury finding of overexertion on the date of the stroke, and it was supplemented by Dr. Hicks' opinion testimony which we have summarized.

The exertion of Andrew Curry in this case is factually similar to that of the decedent in our case of U. S. Fidelity & Guaranty Co. v. Herzik, 359 S.W.2d 914 (Tex.Civ.App.1962, writ ref. n. r. e.).  In that opinion we quoted from Texas Employers' Ins. Ass'n v. McGrady, 296 S.W. 920 (Tex.Civ.App.1927, writ dism.), a statement that it should not be said that an injury from overexertion by one in a debilitated condition is not an accident simply because it required less violent exercise to produce the injury.  "Since we cannot fix any standard of condition, neither can we fix any standard of sufficiency of cause operating upon the condition."

It has been held many times that exertion sustained by an employee in the course of his employment is regarded as an accidental injury, and in many of those cases evidence of strain or exertion comparable to that adduced in the instant case has been held to support findings of the causal connection with which we are here concerned.  See Mountain States Casualty v. Redd, 397 S.W.2d 321 (Tex.Civ.App.1965, writ ref., n. r. e.) ; Midwestern Insurance Co. v. Wagner, 370 S.W.2d 779 (Tex.Civ. App.1963, writ ref., n. r. e.) ; Pan American Fire and Casualty Co. v. Reed, 436 S. W.2d 561 (Tex.Civ.App.1968, writ ref. n. r. e.) ; Standard Fire Insurance Co. v. Sullivan, 448 S.W.2d 256 (Tex.Civ.App.1969, writ ref. n. r. e.).

■ We also hold that there was evidence that the claimant's strain or overexertion was causally related to the onset of his stroke and that the jury's affirmative finding on this issue was not contrary to the great weight of the evidence.

The facts in the instant case resemble those in the case of Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex.Sup.1969), in that the jury had direct evidence of the occurrence on the job (when the employee felt a pain in his head and fell after lifting the ice can).  There was evidence that his symptoms appeared shortly and that he was taken to a hospital where their presence was confirmed by a doctor; in this case he testified that the plaintiff had suffered a stroke, and even if we view his testimony in the light most favorable to the appellant, he said that what happened on the job *could* precipitate the injury.  As stated in Kneten, with those facts given, it was not conjecture on the part of the jury to conclude that the occurrence on the job was probably a cause of the attack and resulting disability.

We conclude, as the Supreme Court did in the Kneten case, that the doctor said nothing to rule out a medical relation be-

tween the work occurrence and the attack (or stroke), nor has he negated the reasonableness of the finding of the causal connection. His testimony was not so adverse to the existence of probable cause as to overcome the weight of the circumstantial evidence.

We consider the medical testimony as to the causal connection between the incident on the job and the stroke in the instant case to be not materially different from that adduced in our case of Aetna Insurance Co. v. Hart, 315 S.W.2d 169 (1958, writ ref. n. r. e.), and point out that the Texas Supreme Court in Insurance Co. of North America v. Myers, 411 S.W.2d 710 (1966), expressly distinguished the Hart case as one of those in "medical situations not involving the highly uncertain medical problem of the nature, origin and aggravation of cancer" thus leaving unchanged the rule concerning the quantum of proof required to raise the issue of causal connection in stroke cases.

We affirm the judgment of the trial court.