**Flora May WHITAKER, Appellant,**

**v.**

**GENERAL INSURANCE COMPANY OF AMERICA, Appellee.**

**No. 17519.**

Court of Civil Appeals of Texas, Dallas.

Dec. 11, 1970.

Rehearing Denied Dec. 31, 1970.

David M. Kendall, Jr., Woodruff, Hill, Kendall & Smith, Dallas, for appellant.

James K. Graham, Harris, Ball, Graham & Hill, Arlington, for appellee.

CLAUDE WILLIAMS, Justice.

This is a workmen's compensation case which was instituted by Flora May Whitaker in which she sought to recover statutory benefits for the death of her husband, James Huey Whitaker. The action was brought against General Insurance Company of America which was the compensation insurance carrier for Mr. Whitaker's employer.

In her trial petition she alleged that her husband was an employee of R. L. Stewart's Texaco Service on November 21, 1968 and that while he was in the course and scope of his employment on that date he "actively strained and injured his heart and arteries which resulted in a heart attack which caused his death." The insurance company defended with a general and a specific denial that Whitaker had sustained a compensable injury within the meaning of the workmen's compensation law and that his death was caused by a progressive condition of a pre-existing heart disease.

The case was tried before the court and a jury and in response to special issues submitted the jury found that Whitaker sustained an injury on November 21, 1968 but that such injury did not result from an accident. The jury also found that such injury was sustained in the course of his employment and was a producing cause of Whitaker's death. It was also determined by the jury that Whitaker's death was not caused solely by a heart condition or heart disease which existed prior to November 21, 1968. The trial court overruled Mrs. Whitaker's motion to disregard the answer of the jury to the effect that her husband's injury was not due to an accident, and to render judgment based upon the remaining verdict. The court sustained the insurance company's motion for judgment *non obstante veredicto* and rendered judgment denying Mrs. Whitaker any relief. The judgment recited that the evidence presented raised no issue of fact and that a directed verdict would have been proper and should have been granted.

Appellant attacks the take nothing judgment in seven points of error, briefed together, which present the basic question of whether there is any evidence of probative force to support the jury's answers to the issues of injury and producing cause. We have carefully examined this record in the light of the well established rules of judicial review of judgments rendered *non obstante veredicto*. Burt v. Lochausen, 151 Tex. 289,

249 S.W.2d 194 (1952); Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962); McGill v. Minyard's Food Stores, Inc., 417 S.W.2d 309 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.). Based upon our review of the record in this case in the light of these rules we are convinced that there was no evidence of probative force to support the jury's answers to the various issues relating to injury and producing cause of death and therefore we affirm the trial court's judgment.

The material testimony may thus be summarized: Mr. Whitaker was 62 years of age at the time of his death on November 21, 1968. He had previously been employed by Safeway Stores for 33 years and had retired two years prior to his death. He had not performed any duties or work from the time he retired until he worked on November 21, 1968. On August 6, 1968 he suffered a heart attack for which he was hospitalized and treated by Dr. Michael M. Markowitz, a heart specialist. Dr. Markowitz testified that when he saw Whitaker on August 6 he determined that he had suffered from congestive heart failure and what appeared to be an acute myocardial infarction. He classified the heart attack as a severe one and said that Mr. Whitaker was in a critical condition. Whitaker responded from the treatment and was discharged from the hospital on August 23, 1968. The doctor testified that Mr. Whitaker's heart was permanently damaged and that his prognosis was not good. Dr. Markowitz encouraged Whitaker to get out and walk but warned that he could easily have another heart attack at any time.

Ray L. Stewart, who owned and operated Stewart's Texaco Service Station, had known Whitaker for a number of years. He said that he hired Whitaker to come to work on November 21, 1968; that he hired him more out of friendship than anything else because he knew him and knew him to be a good man. He testified that Whitaker came to work about 7:00 o'clock in the morning and that he instructed him

to do light work in the front end of the station. This consisted of checking oil, wiping windshields, filling up the tanks with gasoline. Stewart said that in checking the oil, wiping the windshields and putting the gas in the tanks, all would require Whitaker to bend over to some extent. He said that Whitaker did this kind of work during the morning, that is, whenever cars came into the station to be serviced. When no cars were in the station that Whitaker would remain idle, doing nothing. Whitaker did not engage in any other kind of work at the station. He did not change any tires or grease any cars.

Bonnie Bunton, a mechanic who worked at the filling station, testified that he did various types of work around the filling station including mechanical work as well as waiting on cars in front. On the day in question he saw Whitaker working at the station and observed him "cleaning a couple of windshields on cars, and I did see him putting gas in one car." He said:

"Q All right. Were you there at all times except for your lunch hour?

A Yes, sir, I was.

Q During that time that you were there, both morning and afternoon, did he ever do anything strenuous, such as change a tire?

A No, sir.

Q Anything like greasing a car?

A No, sir.

Q All right. Do you know of any work that he did, which would have been more strenuous than the front work that you've described?

No, sir."

\* \* \* \* \* \*

"Q All right. After you got back from lunch, do you know of any activity that Mr. Whitaker was engaged in that would be classified as more strenuous than the work you described about wiping windshields and that sort of thing?

A No, sir."

He testified that about 3:00 or 3:30 in the afternoon while he was servicing an automobile he saw Mr. Whitaker talking with a customer in front of the station; that he heard a disturbance and went around in front of the car he was servicing and found Whitaker lying on the driveway; that he was gasping for breath and someone called an ambulance which came and took him away. He testified that at no time during the day did he ever see any grease on Mr. Whitaker's clothing nor did he observe any blood on his hand.

John F. Walters visited the station in the afternoon to see Mr. Stewart. When he arrived he found that Stewart was away from the station. He had a conversation with Mr. Whitaker in the driveway of the station and Whitaker told him that Stewart would be back pretty soon. He said that he and Whitaker were laughing and talking and "just shooting the breeze" in general for about five minutes during which time Whitaker was not doing any work of any kind. He was merely talking and not exerting himself in any manner. While they were conversing Whitaker suddenly threw up his hands and fell to the ground. He observed nothing about Whitaker which would indicate that he had been engaged in any physical exertion prior to that time.

Mrs. Whitaker, appellant, and wife of the deceased, testified that her husband had left home about 6:30 on the morning of November 21, 1968; that he was wearing a green uniform; and that "he was real proud to have a job." He returned about 12:15 for lunch. She saw some grease on his back and also observed a cut on his hand which was causing some blood to show on his hand. She described the cut as being about as long as the width of her finger and being on the top of his hand. She described the spot of blood as big as about a silver dollar.

Dr. Markowitz, after testifying concerning his treatment of Whitaker for the previous heart condition and attack, and based

upon a hypothetical question concerning the activity performed by Mr. Whitaker at the service station, was asked to state with reasonable medical probability whether or not the man simply suffered another attack or whether he might have suffered an injury which caused an attack. The doctor stated that there was no way to give such an opinion. He said that with exercise it was more likely that the man would have a heart attack but it still could have easily happened with no exercise. He testified that without an autopsy he was not 100 per cent sure that the second attack killed Whitaker but he would have to assume that he died of a heart attack. He said in reasonable medical probability some of the fatty deposit inside the arteries that fed the heart broke loose and clogged an artery. He said: "I would say if I had to make a guess as to the reason for his death, I would guess that he had an attack and instead of the muscle dying he had an arrhythmia and with the ventricular fibrillation died before the muscle had a chance to die. The blood wasn't pumped out, and he just died, and that by far is the leading cause of his sudden death."

Dr. Walter F. Pickett, who had never seen Mr. Whitaker during his lifetime, testified in response to a hypothetical question that in reasonable medical probability Whitaker died of a heart attack. Again, in answer to a hypothetical question which included "the strain of the wiping of the windshields, the bending over and checking the oil, reaching to wipe the windshields, the bending involved in putting gas into automobiles, and the fact that he was anxious to please on his first day back at work" rendered an opinion that the work activities contributed to cause an injury to the physical structure of the heart and thereby caused the heart attack and his death. Appellee timely interposed an objection to these hypothetical questions because they incorporated elements not in evidence. Several times during the doctor's testimony he placed emphasis upon the excitement experienced by Whitaker because of his first day at work following a long period of inactivity. Thus he said: "I think to some degree the excitement and the work he was doing and hadn't worked any for a long time, probably had something to do with bringing on his heart attack." Counsel for appellee posed a hypothetical question to Dr. Pickett including the fact that at the time of his death he was merely standing in the driveway talking. The doctor said that it was hard to answer that question but "the fact that he had gone three months previous to his other heart attack without having one and then the day that he goes back to work having one, then you would have to assume that it had something to do with this heart attack." Again he said: "I'll concede that it had something to do with bringing it on. Him running around there and working on the cars, I believe it contributed to a certain extent, maybe not at all."

The fact that Mr. Whitaker had previously suffered a severe heart attack and was not a well man when he went to work for Mr. Stewart is not, in itself, sufficient to deny recovery under the Compensation Act which is purposely designed to compensate an employee for incapacity flowing from an accidental personal injury sustained within the course and scope of his employment. It is settled law that liability arising under the Act cannot be defeated by a mere showing that the injured employee was not a well person at the time of the injury. Gill v. Transamerica Insurance Co., 417 S.W.2d 720 (Tex.Civ.App., Dallas 1967). However, it is equally well settled that the compensation law does not provide for health insurance but is designed purposefully to compensate an employee for incapacity flowing from an accidental personal injury while engaged in the performance of his employment. The mere fact that an employee dies while on the premises of his employer, and during working hours, is not sufficient. It is incumbent upon one seeking to recover death benefits under the law to prove that the deceased sustained an injury which caused or contributed to cause the death.

It is also true that a strain or exertion may be an accidental injury within the meaning of the workmen's compensation law. Hartford Accident & Indemnity Co. v. Gant, 346 S.W2.d 359 (Tex.Civ.App., Dallas 1961); Pan American Fire & Casualty Co. v. Reed, 436 S.W.2d 561 (Tex. Civ.App., Amarillo 1969, writ ref'd); Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 (1938). However, again it must be noted that it is incumbent upon the one seeking recovery to establish by probative evidence that the employee did actually sustain a strain or exertion which would amount to a compensable injury within the meaning of the statute. The Texas cases dealing with the question of strain or exertion are clearly divided. Thus, the cases relied upon by appellant such as Carter v. Travelers Ins. Co., supra; Texas Employers' Ins. Ass'n v. Jenkins, 357 S.W.2d 475 (Tex.Civ.App., Amarillo 1962, writ ref'd n. r. e.); Hartford Accident & Indemnity Co. v. Gant, supra; Midwestern Insurance Co. v. Wagner, 370 S.W.2d 779 (Tex.Civ.App., Eastland 1963, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n v. Brogdon, 321 S.W.2d 323 (Tex.Civ.App., Fort Worth 1959, writ ref'd n. r. e.), as well as many others, all contain evidence of a specific overexertion or strain which could be connected with the resulting injury or death. Illustrative of these cases is that of Carter v. Travelers Ins. Co., supra, in which the Supreme Court pointed to the evidence that the employee, as a part of her work, was caused to lift and carry heavy loads and also to move heavy furniture which resulted in an accidental injury.

The cases relied upon by appellee, such as Southern Casualty Co. v. Flores, 1 S.W. 2d 260 (Tex.Com.App., 1928); Gorman v. American General Ins. Co., 179 S.W.2d 814 (Tex.Civ.App., San Antonio 1944); Houston Fire & Casualty Ins. Co. v. Biber, 146 S.W.2d 442 (Tex.Civ.App., San Antonio 1940); Monks v. Universal Underwriters Ins. Co., 425 S.W.2d 431 (Tex.Civ. App., Tyler 1968); General Accident Fire

& Life Assur. Corp. v. Perry, 264 S.W.2d 198 (Tex.Civ.App., Galveston 1954); and O'Dell v. Home Indemnity Co., 449 S.W.2d 485 (Tex.Civ.App., Amarillo 1969), all involve cases in which there was no evidence of compensable injury which produced the death of the employee. As stated by the court in O'Dell v. Home Indemnity Co., supra, where there is no probative evidence that the work being performed by the deceased was strenuous or required overexertion, and that there was some causal connection between same and the fatal heart attack, recovery must be denied. Also, as pointed out by the court in General Accident Fire & Life Assur. Corp. v. Perry, supra, it is essential that there must exist direct probative evidence of exertion or strain. In that case a doctor had testified in response to a hypothetical question, as was done in this case, and the court said:

"* * * even if it be conceded that the facts assumed in the hypothetical question were permissible inferences to be drawn from the facts and circumstances which the probative evidence does support, it becomes apparent that the additional assumptions necessary to the establishment of a causal connection between proven fact or permissible inference and the death of the deceased can be reached only by piling presumption upon presumption and drawing inference from inference."

As Justice Norvell, then on the San Antonio Court of Civil Appeals, said in Houston Fire & Casualty Ins. Co. v. Biber, 146 S.W.2d 442 (1940):

"There is no direct evidence that Biber, * * * did anything necessitating strenuous physical exertion. For proof of these matters, appellees rely upon inferences which they contend the jury could legitimately draw from the facts * * *.

* * * * * *

"Under the evidence of this case we do not believe it can be said without re-

sort to conjecture or surmise that Biber had undergone muscular exertion shortly prior to the occurrence. * * * However, if we assume that it is more probable that the fatal stroke was caused by muscular exertion, appellees still have the burden of proving that such muscular exertion had a causal connection with Biber's employment. * * * The fact that Biber was about the premises of the employer, in itself is not sufficient to establish the necessary causal relationship.

" * * * we hold that the jury findings * * * that Biber, * * * underwent physical exertion or became overheated causing a cerebral hemorrhage and death, are based upon speculation, conjecture and surmise, and can not stand."

In the light of the record developed here we are of the opinion that the cases relied upon by appellee are controlling. There is no evidence of probative force in this record that Mr. Whitaker was required to perform work that required strenuous exertion or strain. There is no evidence that Mr. Whitaker performed any kind of work at all for some time prior to his death. Dr. Pickett's answer in response to a hypothetical question is obviously an opinion based in part, if not in whole, upon facts which are not proved in the record. Thus he predicates his opinion upon the fact that Mr. Whitaker was overexcited about going to work; that he was anxious to please his employer; that he exerted himself while wiping windshields; and that he ran around working on cars. The record does not support the basis for this opinion and cannot be said to constitute probative evidence. Moreover, as stated in the cited cases, the verdict of the jury must rest upon surmise, circumstances, and inferences which cannot be reasonably drawn from the testimony and therefore must fall.

Appellant has failed to produce evidence of probative force to establish a compensable injury under the Workmen's Compensation Law of Texas which produced the death of Mr. Whitaker. Accordingly, the trial court should have instructed a verdict for the appellee and his action in granting judgment *non obstante veredicto* was correct.

The judgment of the trial court is affirmed.