**Mary L. BAIRD, Petitioner,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Respondent.**

**No. B–3618.**

Supreme Court of Texas.

April 25, 1973.

Rehearing Denied June 20, 1973.

Huff & Bowers, Forest Bowers, Lubbock, for petitioner.

Gibson, Ochsner, Adkins, Harlan & Hankins, Michael C. Musick, Amarillo, for respondent.

STEAKLEY, Justice.

This is a suit by Mrs. Mary L. Baird for Workmen's Compensation death benefits. Her husband died while at work and the question is whether the evidence raised fact issues in respects requisite to a recovery. The trial court held not and instructed a verdict for Texas Employers' Insurance Association, the employer's compensation carrier. The Court of Civil Appeals has affirmed. 483 S.W.2d 931. We reverse and remand for trial.

Baird was a supervisor for an electric company with its home office in Amarillo,

Texas. He had seen a heart specialist in March, 1969, who advised that he was in mild congestive heart failure and that he had angina pectoris. Thereafter he took digitalis and nitroglycerin, known heart medications. On the day of his death, October 6, 1970, Baird met his helper at the Amarillo office and planned the installation on that day of electrical wiring in a cotton gin near Turkey, Texas. The helper departed to obtain supplies and Baird drove to the gin site. After arrival of the helper with the required items, the two proceeded to do their work. The evidence indicates that Baird utilized a five foot ladder in determining the placement and length of aluminum conduit required to enclose the electrical wiring. After the measurements, the helper cut the conduit to the desired length and threaded the pipe for fitting of connectors. It appears that he and Baird also shaped the conduit to fit between two switch boxes located on the wall, one of which was about ten feet above the floor, by means of a portable tool. They then went to lunch. The helper testified that while driving to a cafe in Turkey, Baird complained that "he had a pain in his chest, or that his chest had been hurting." They were in the cafe approximately thirty minutes and then returned to the job site. Upon resuming work, Baird apparently held one end of a piece of conduit while measuring and marking it for cutting. Shortly thereafter he was stricken and died almost immediately. There was no evidence of an autopsy but the record would support a finding that Baird died of a heart attack.[1]

There is uncertainty as to how many times Baird mounted the five foot ladder and whether, in doing so, he climbed one or more or all of the four or five steps; and whether he handled the conduits more than holding one end while the helper handled the other.[2]

1. Dr. Robert E. Clark, the medical witness whose testimony was offered by Mrs. Baird, testified:

Q. . . . Now, I ask you to assume the truth of those matters, and tell us, please, sir—and was pronounced dead there at the scene—and tell us, please, sir, and base your answer on a reasonable medical certainty or probability, can you tell us, based on this, what he probably died of?

A. Yes, sir. In the first place, a history of having had an enlarged heart, and congestive failure, requiring digitalization, and also a history of ischemic T-wave changes, would indicate that the patient probably had had coronary arteriosclerosis and coronary disease, and probably angina pectoris in the past.

The fact that the patient had exerted himself moderately, or more than normal, would definitely require more cardiac output at the time he was working, which would impose an added load on the myocardium, or heart muscles, and would increase the need for oxygenation of the blood, or the circulation of the blood through the coronary vessels. The fact that he had angina shortly after exertion, or right after exertion—

Q. —Are you referring to that as the pain?

A. The pain in his chest would indicate that he had definitely been deprived of oxygenation to the heart muscles. And then the fact that he had a sudden, rapid death would indicate probable heart attack, probable cardiac arrest, secondary myocardial infarction, or secondary to a conduction defect, which could have been brought about by the angina and the lack of circulation.

Q. Can you tell us with a reasonable medical certainty whether or not he died with a heart attack, based on these facts that we told you here today?

A. I would say reasonable certainty, he did, yes.

2. Charles Starr, Baird's helper, testified:

Q. . . . Compare his work with the men he was more or less supervising? Can you tell us a little bit about the nature of his work?

A. He was strictly a supervisor, and didn't do work, as such, like physical labor.

Q. Was that true on this particular day, or did he do some work?

A. No, he did some work on this day.

. . . . .

Q. Now, will you describe what he would have to do, and what you would have to do with reference to any climbing involved?

A. The first box that we were coming from was approximately, maybe ten foot

The theory for recovery of death benefits was that Baird had a heart condition and he suffered a fatal heart attack resulting from strain or over-exertion in the course of his work activities. As indicated, the problem of the case as it reaches us is whether under the evidence there were fact issues to be resolved. Mrs. Baird says in her application for writ that "the exertion said to be the producing cause of the heart attack and ensuing death of Mr. Baird was principally that of climbing up and down the stepladder . . . though not necessarily constituting a tremendous strain or over-exertion in another person, did constitute strain and over-exertion to Mr. Baird, because of his weakened physical condition. The condition and the activity, one acting on the other, produced the heart attack and death." Indeed, the hypothetical question propounded to Dr. Clark, who did not know Baird and had never treated him, assumed "he climbed a ladder" and the question was stated in terms of "whether or not the climbing of the ladder, amongst the other exertions that I have asked you to assume, was or was not a producing cause of his death." The other assumed exertions were reaching up and measuring a conduit; "doing work that he had not customarily done in the past few days or weeks, or perhaps a longer period of time than that;" and "bending the conduit." The medical witness replied that "I would feel that it is very probable that it was the producing cause of his death." [3]

It is the well-argued position of Respondent TEIA, the compensation carrier, in defending the instructed verdict in its favor, that there is no evidence the deceased suffered a strain or over-exertion. It summarizes the activities of Baird during the morning of his death as no more

---

up, ten foot from the floor, and we had to have a little step ladder to go from there up the wall, and then, of course, down the wall.

Q. What sort of step ladder was this? Did it have a platform on top?

A. Yes, it folded out, and approximately total height of approximately five feet.

Q. Did you see him climb this step ladder?

A. Yes.

Q. And stand on the top?

A. I don't recall if he specifically stood on the top.

Q. But he did climb it?

A. Yes.

Q. Did he climb it more than once?

A. Yes.

Q. After you got there, on this particular occasion?

A. Yes.

Q. And when he would climb the ladder, to whatever height he was, and stand on top, or on one of the rungs, what particular thing would he be doing, after he got to that location?

A. He was mostly—it was mostly looking, after he got up there, or holding; holding the conduit the length of conduit we had fixed.

3. Q. All right, sir. Now, I will ask you if you have an opinion as to whether there is any relationship between the exertion that I have outlined to you, and the fatal heart attack? Do you have an opinion whether or not there is any relationship?

A. We have a definite opinion that work and stress can cause a heart attack. There is no two ways about it. In a person that already has deficiency of coronary circulation, it certainly could.

Q. And in this particular case, would you care to draw an opinion, just based on these facts?

A. The sudden death, the type of death, in my opinion would be that he had had a heart attack, and died from an acute infarction.

Q. And the exertion I outlined to you, what did that have to do with it?

A. We definitely feel that exertion can very well bring on one. Emotional stress can bring on one. Hard exercise can bring on one.

.    .    .    .    .

Q. In this particular case, if you assume he climbed a ladder, as this young man said that he did, can you tell us again, based on reasonable medical certainty, whether or not the climbing of the ladder, amongst the other exertions that I have asked you to assume, was or was not a producing cause of his death?

A. I would feel that it is very probable that it was the producing cause of his death.

than stepping up on a ladder, four or five steps high, on two or three occasions, with no evidence of how many of the steps were used; as lifting a piece of light aluminum conduit weighing ten or twelve pounds; and as assisting his helper in bending the conduit with a portable tool requiring some pressure; and, in the afternoon, as no more than holding up one end of a ten pound conduit, and of walking to the truck where he was standing when stricken.

The problem at hand is a recurring one and usually reaches us in the context of a no evidence contention against findings by the trier of fact. Here, however, the question is whether under the record there are fact issues to be resolved by the trier of fact. More often than not, as here, the question is close. But consistency with action in the many similar cases this Court has considered, some of which are later noted, leads us to the conclusion that issues for resolution by the trier of fact were raised by the evidence.

Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 (1938), appears to be the first writing by this Court on the problem. It was there held that accidental injury in the course of employment was established if the cerebral hemorrhage occurred while the employee was at work, and was brought on, produced, or caused by the lifting and carrying of heavy loads, and the moving of heavy furniture; and that evidence "largely circumstantial," together with the testimonial opinion of medical experts that the lifting and straining could have caused the ruptured blood vessel, was legally sufficient to show that it was caused in the course of employment.

■ It has also been settled that it is not required that the injury in the course of employment be the sole cause of disability or death, and that a predisposing bodily infirmity will not preclude compensation. See Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026 (1940).

Emphasis was recently given in Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex.1969), where there was a prompt onset of a heart attack, that such followed an occurrence competent to affect adversely a defective heart; and that the circumstances were such it was reasonable to believe that what the employee did on the job precipitated physical failure.

■ Still later, and although compensation benefits were denied in the context of a different problem, it was noted in Olson v. Hartford Accident & Indemnity Company, 477 S.W.2d 859 (Tex.1972), that this Court has been liberal in construing the words "accidental" and "injury" in cases involving heart attacks and strokes, and in reaching the conclusion that the record at hand presented some evidence of a particular strain, over-exertion or shock which caused the incapacity. Interestingly, the dissenting opinion in *Olson* visualized the problem at hand, i. e., the suffering of a heart attack by a workman after repeated job-connected climbing of ladders. The liberality emphasized in *Olson* is seen consistently in the cases after *Carter* where we have denied no evidence attacks in the various fact situations there presented. See Transport Insurance Company v. McCully, 481 S.W.2d 948 (Tex.Civ.App.1972, writ ref'd n. r. e.); Commercial Standard Insurance Company v. Curry, 460 S.W.2d 464 (Tex.Civ.App.1970, writ ref'd n. r. e.); Standard Fire Insurance Company v. Sullivan, 448 S.W.2d 256 (Tex.Civ.App.1969, writ ref'd n. r. e.); Pan American Fire & Casualty Company v. Reed, 436 S.W.2d 561 (Tex.Civ.App.1968, writ ref'd n. r. e.); Midwestern Insurance Company v. Wagner, 370 S.W.2d 779 (Tex.Civ.App.1963, writ ref'd n. r. e.); Texas Employers' Insurance Association v. Hatcher, 365 S.W.2d 641 (Tex.Civ.App.1963, writ ref'd n. r. e.); United States Fidelity & Guaranty Company v. Herzik, 359 S.W.2d 914 (Tex.Civ.App.1962, writ ref'd n. r. e.); Aetna Insurance Company v. Hart, 315 S.W.2d 169 (Tex.Civ.App.1958, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n v. Frazier, 259 S.W.2d 242 (Tex.Civ.App.1953, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n

v. Talmadge, 256 S.W.2d 945 (Tex.Civ.App. 1953, writ ref'd n. r. e.) ; Texas Employers' Ins. Ass'n v. McGrady, 296 S.W. 920 (Tex. Civ.App.1927, writ dism'd). As recently stated in *Sullivan*, it is now well settled that a heart attack caused by strain or over-exertion is an accidental injury to the physical structure of the body within the meaning of the Workmen's Compensation Act; and in the very nature of these cases, the evidence is most often largely circumstantial or based on answers by medical witnesses to hypothetical questions.

TEIA cites particularly Whitaker v. General Insurance Company of America, 461 S.W.2d 148 (Tex.Civ.App.1970, writ ref'd n. r. e.), together with O'Dell v. Home Indemnity Company, 449 S.W.2d 485 (Tex. Civ.App.1969, writ ref'd n. r. e.) ; and Monks v. Universal Underwriters Insurance Company, 425 S.W.2d 431 (Tex.Civ. App.1968, writ ref'd n. r. e.). Each involved the death or disability of a workman from a heart attack where we left undisturbed no evidence rulings denying compensation benefits. *Whitaker*, we believe, is distinguishable in the holding that there was no evidence of probative force that work requiring strenuous exertion or strain was performed by the workman; and that the medical opinion to the effect that work activities contributed to heart injury which in turn caused the heart attack, was based in part, if not in whole, upon facts which were not proved in the record. In *O'Dell* and *Monks,* it was held there was no evidence that a heart attack was related to or occasioned by any unusual strain or exertion in the work of the employee, or that he performed any unusually strenuous work on the day in question.

In our view, the case at hand is not ruled by *Whitaker, O'Dell* and *Monks,* and like cases, but falls in the mainstream of the cases first noted. An answer to the problem of whether the evidence, most often circumstantial in nature, together with the inferences that may be drawn therefrom, present issuable facts, is always difficult in this type of case. There is no precise rule to measure probative force and by which to decide if questions of fact are raised by the evidence. But as indicated, it is our view that the record here presents issues of fact with respect to whether Baird suffered strain or exertion while at work and, if he did, its adverse effect. There was an attack during work resulting in his almost immediate death. He was shown to have a heart infirmity that had limited his normal work activities to supervision of others; but in the words of his helper, "he did some work on this day" of the nature which he described and which, in the light of the medical testimony, could be said to have been the precipitating cause of his death. The circumstances thus shown by the evidence are such as to call for a factual determination of whether Baird suffered an injury in the course of employment, and, if so, whether such was a producing cause of his death.

The judgments below are reversed and the cause is remanded for trial.

GREENHILL, C. J., notes his dissent.