INA OF TEXAS, Appellant,

v.

Lucy J. HOWETH, Appellee.

No. 01–87–00679–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 28, 1988.

Ervin A. Apffel, Ron A. Sprague, Otto D. Hewitt, III, Kenneth J. Bower, McLeod, Alexander, Powell & Apffel, Galveston, for appellant.

James P. Simpson, Laurrette T. Williams, Simpson & Beeton, Texas City, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

DUNN, Justice.

INA of Texas ("INA") appeals from a judgment entered on a jury verdict finding that Lucy J. Howeth sustained a injury on or about February 16, 1984; that the injury was a producing cause of total incapacity; and that the total incapacity was permanent.

In its first four points of error, INA asserts that there was no evidence or insufficient evidence to support the jury's answers to special issues one and three, and that the trial court erred in denying its motions for instructed verdict, j.n.o.v., and new trial.

INA contends that there was no evidence or insufficient evidence that Howeth sustained an injury on February 16, 1987. Moreover, INA claims that Howeth is barred from recovering worker's compensation benefits because Howeth's disability resulted from a non-occupational disease called "ganglioneuroma," which causes a natural and progressive growth of tumors and cysts in the spinal column. The mere aggravation, acceleration, or excitement of a non-occupational disease has been held to be non-compensable. *See Schaefer v. Texas Employers' Ins. Ass'n,* 612 S.W.2d 199 (Tex.1980); *Home Ins. Co. v. Davis,* 642 S.W.2d 268 (Tex.App.—Texarkana 1982, no writ).

Under the Worker's Compensation Act, only occupational diseases are compensable. Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 20 (Vernon Supp.1988). An occupational disease is defined as "any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom." *Id.* An injury, which includes occupational diseases, means "damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom." *Id.* Ordinary diseases of life, or non-occupational diseases, are not compensable "except where such diseases follow as an incident to an 'Occupational Disease' or 'Injury' as defined in this section." *Id.*

Lucy Howeth was employed as a dishwasher at Monsanto for approximately 10 years, and was required to work long hours and lift heavy items. On the morning of Thursday, February 16, 1984, Howeth and a co-worker reached down to pick up opposite ends of a 40-pound case of condensed milk cans pursuant to their regular kitchen duties. While lifting the case, Howeth allegedly felt a sharp pain in her lower back that radiated down her leg. Although she completed work that day and returned to work the next day, she allegedly felt the same pain and was taken by ambulance to a nearby hospital. Howeth confided to a co-worker that she had hurt her back, but did not report it to her supervisor or to the physician at the hospital.

Howeth visited her family physician, Dr. Kealey, on Monday, and he reported the incident to Howeth's employer. After seeing several physicians, Howeth was referred to Dr. Charles A. Borne, M.D., who performed surgery on her back and removed a tumor and cysts.

Howeth testified that she had no prior experience with backaches and never had any pain associated in her back prior to the incident on February 16, 1984. She has not returned to work since February 17, 1984. Natalie Osoria, Howeth's co-worker, testified that she was also lifting the box and noticed that Howeth said "Ouch." The next day, Howeth told her that she had hurt her back. Jewel Edwards, another co-worker, testified that she observed Howeth in pain, and that Howeth "couldn't

stand, she couldn't sit, she couldn't walk." Joann Oliver, Howeth's daughter, testified that her mother had no previous history of back problems.

Dr. Borne, Howeth's neurosurgeon, testified that Howeth related the back pain to a "lifting incident" at work. The myelogram taken by Dr. Borne revealed that there was an abnormal contour in the spinal canal, resulting in a diagnosis of sacral tumor. A sacral decompression laminectomy was performed, and a "ganglioneuroma" tumor and cysts were removed. Dr. Borne further testified that the tumor and cysts were present in Howeth since birth.

In Borne's opinion, based on "reasonable medical probability," Howeth's "persistent problem with pain and *disfunction in the nerves* in this area was related to that lifting." He testified that Howeth had developed incontinence, loss of bladder control, and loss of bowel function. He concluded that her condition is permanent and that she is totally disabled from her work. Moreover, he stated that it was possible to go throughout one's entire life without such cysts and tumors in the low back becoming symptomatic and disabling.

INA's witness, Dr. Leroy Lockhart, an orthopedic surgeon, testified that he examined Howeth pursuant to a request by the Industrial Accident Board. Dr. Lockhart testified that the mass in the spinal column was gradually enlarging and increasing in size and was gradually wearing away the bone in the spinal canal. He testified that the progress of the tumors was the result of a disease and not of an injury. "If lifting or bending had anything to do with it, it was a stretch-type mechanism of these sacs and cysts, which is an unusual event because this thing had been there for years." According to Lockhart, the tumors and cysts become symtomatic "when they get large enough to where they cause enough pressure that they cause weakness or pain. If she had a lower back strain, it was a very minor part of her problem because its quite obvious that the presence of ganglioneuroma is probably the cause of her major symptoms."

When asked whether swelling was a result of the injury as opposed to disease process, Lockhart replied, "Well, I think it's difficult to say 100 percent, but the tumor enlarging is definitely going to cause edematous nerve tissue. If the injury had anything to do with it, it would be edematous just because it was big and in bending it stretched it."

In response to special issue one, the jury found that Howeth sustained an injury on or about February 16, 1984. In response to special issue three, the jury found that the injury was the producing cause of total disability. INA claims there is no evidence or insufficient evidence to support these findings.

There is no fixed rule of evidence by which a claimant has to establish the fact of his injury. *Select Ins. Co. v. Patton*, 506 S.W.2d 677, 682 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). The Texas Supreme Court has further defined injury as "one that is an undesigned, untoward event that is traceable to a definite time, place and cause. In other words it is the result of an accident." *Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334, 336 (Tex.1979). Proof should establish that an injury is causally connected with employment activities, conditions, or environments. *Garcia v. Texas Indem. Ins. Co.*, 146 Tex. 413, 209 S.W.2d 333 (Tex.1948).

It is not required that the injury sustained in the course and scope of employment be the sole cause of disability, and a pre-disposing bodily infirmity will not preclude compensation. *See Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 652 n. 1 (Tex.1976); *Baird v. Texas Employers' Ins. Ass'n*, 495 S.W.2d 207, 210 (Tex.1973). The extent and duration of the disability received from an injury is at best an estimate, which must be determined by the trier of facts from all pertinent evidence. *Texas Employers' Ins. Ass'n v. Steadman*, 415 S.W.2d 211 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

An injury that aggravates a pre-existing bodily infirmity is compensable provided over-exertion or an accident arising

out of employment contributed to the incapacity. *See Baird,* 495 S.W.2d at 207. It is enough if it is "a" cause, even though there were other causes. *Id.*

When reviewing a no evidence point of error, we examine the record for evidence that supports the finding while ignoring all evidence to the contrary. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). If there is no evidence to support the finding, we are then required to further examine the record to determine whether the contrary position is established as a matter of law. *Id.* When reviewing questions of "factual sufficiency," we consider and weigh all the evidence, both in support of and contrary to the challenged finding. We must uphold the finding unless we determine that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The evidence showed that Howeth felt an immediate pain in her lower back when she lifted the case of milk. Howeth's co-worker verified her testimony. The following day, after attempting to work, she was unable to move, and an ambulance was called. In her 10 years of work at Monsanto, she had no problems with her back, and testified that she never had problems bending or lifting anything before. Moreover, Dr. Borne related Howeth's problems to the lifting incident, and testified that she possibly could have gone her entire life without the need of the back surgery. He was of the opinion that the bending and lifting stretched the cysts and put pressure on the nerve roots in her spinal column.

The evidence presents issues of fact with respect to whether Howeth sustained an injury at work, and if she did, its adverse effect. *Compare Baird,* 495 S.W.2d at 211. We find that there is evidence of an injury that is not so weak or so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. at 662, 244 S.W.2d at 660.

INA's first and third points of error relating to special issue number one are overruled.

The evidence with regard to special issue three, which inquired about whether the injury was a producing cause of total disability, was supplied by Dr. Borne. Dr. Borne testified that Howeth could possibly never have been disabled by the cysts. He stated, in response to a question premised on reasonable medical probability, that Howeth's nerve disfunction was related to the lifting incident. Dr. Lockhart also testified that it was highly speculative whether she would have eventually become disabled: "I don't think anyone can say that for sure."

Although the evidence clearly shows that Howeth was afflicted with a pre-existing non-occupational disease, the lifting incident caused an increase in intraspinal pressure that compromised the nerve roots. However, although the record does suggest that the pre-existing disease largely contributed to the disability, INA did not plead or request the defense of "sole cause," which could have reduced the percentage of disability produced by the pre-existing non-occupational disease. The burden was on INA to plead, prove, and secure a finding on such issue. Tex.Rev. Civ.Stat.Ann. art. 8306, sec. 22 (Vernon 1967); *Texas Employers' Ins. Assoc. v. Etheredge,* 154 Tex. 1, 272 S.W.2d 869 (1954). Thus, the defense was waived. We need not address whether the holding in *Home Ins. Co. v. Davis,* 642 S.W.2d 268 (Tex.App.—Texarkana 1982, no writ) (aggravation, acceleration, or excitement of a non-occupational disease does not constitute a compensable injury under the Act) applies because of INA's failure to plead "sole cause," and because the disease was "incident" to an "injury." Article 8306, sec. 20.

INA's second and fourth points of error relating to special issue three are overruled.

INA's fifth point of error complains that the trial court abused its discretion in submitting a definition of injury over its objec-

tion and in refusing to submit either of INA's requested definitions.

INA contends that a sole cause instruction should have been submitted, but this defense was not pleaded or requested as an issue and therefore was waived. *See* art. 8306, sec. 22. In the case on which INA relies, *Charter Oak Fire Ins. Co. v. Taylor*, 658 S.W.2d 227 (Tex.App.—Houston [1st Dist.] 1983, no writ), the defense of "sole cause" was pleaded and requested as an instruction by the insurer.

INA's tendered instructions explained the difference between "ordinary diseases of life" and "occupational diseases." However, an instruction identical to the trial court's definition of injury was upheld in *Lubbock Indep. School Dist. v. Bradley*, 579 S.W.2d 78, 81–82 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). In *Lubbock*, the insurer sought to obtain the same instruction that INA wanted, but the court held that its charge "adequately submitted the question" of whether the employee suffered an injury in the course of her employment. *Id.*

Point of error five is overruled.

By cross-point, Howeth seeks damages under Tex.R.App.P. 84, alleging that the appeal was taken for delay and without sufficient cause. We find that INA had "sufficient cause" to appeal the jury's verdict.

Howeth's cross-point is overruled.

The judgment of the trial court is AFFIRMED.